Donald Deel, Plaintiff-Appellee, v. United States Steel Corporation, a Corporation, Defendant-Appellant.
United States Steel Corporation, Third Party Plaintiff-Appellant, v. Swindell-Dressler Corporation, a Foreign Corporation, Third Party Defendant-Appellee.

Gen. No. 52,204.

First District, Fourth Division.

January 22, 1969.

Harlan L. Hackbert, Jeremiah Marsh, Hackbert, Rooks, Pitts, Fullagar and Poust, of Chicago, for appellant.

Vogel & Vogel, of Chicago (Robert Guritz, of counsel), and William M. Freeman, of Lansing, for appellees.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

United States Steel Corporation appeals from a judgment of $25,000 after a jury trial on plaintiff's claim for personal injuries, and also from a judgment n. o. v. in favor of third-party defendant Swindell-Dressler Corporation in an indemnity action brought by United States Steel Corporation. Plaintiff sued for injuries sustained on a building project for United States Steel Corporation at its South Chicago Works while employed by Swindell-Dressler, a contractor.[1]

Defendant urges the following contentions in its appeal from the judgment in the negligence claim: (1) there was no evidence of negligence; (2) plaintiff failed to prove freedom from contributory negligence; (3) inconsistency in verdicts between the negligence claim and the indemnity claim; and (4) errors in the submission of instructions. Defendant also contends that the court erred in entering judgment n. o. v. for the third-party defendant.

---

[1] Besides United States Steel Corporation the plaintiff sued three contractors: North States Company, Ragnar Benson, Inc., and Morrison Construction Co. The court directed verdicts in favor of North States and Ragnar Benson; the jury returned a not guilty verdict in favor of Morrison Construction Co.

## TESTIMONY

Donald Deel, the plaintiff, testified that on June 10, 1958, he was operating a forklift truck for Swindell-Dressler Corporation in the basement of the United States Steel South Chicago Works; that on that day his foreman, McKee, asked him to move four large steel bases for the Morrison Construction Co.; that he had been working entirely in the south end of the building but that this task required him to proceed through a doorway into the northern room of the basement. He testified that two of the bases were four and one-half to five feet in diameter, and two were six and one-half to seven feet in diameter; that he conveyed the two smaller bases prior to the trip on which the injury was sustained; and that the accident occurred during the third trip about forty-five minutes after the second trip and close to quitting time.

Plaintiff testified further that when seated on his forklift his head was six to six and one-half feet off the ground; that on the trip during which he sustained the injury he was carrying one of the larger bases; that he was proceeding at approximately two miles per hour and looking straight ahead through the center of the base; that when he got to the doorway he had to raise the base to avoid materials left on the floor; that by raising the base, the mast of the forklift was elevated; that the top of the base was then nine and one-half to ten feet in the air; that he could no longer look straight through the base but had to look to both sides to avoid explosive acetylene bottles and other objects left in his path; and that he was suddenly struck in the neck by a black rubber coated cable which was one inch in diameter. He said that the cable was strung between two columns which were ten to twelve feet apart and fifteen to twenty feet north of the doorway, and that after the accident the cable was hanging neck-high but was only one foot higher at the points where it was hitched on the columns.

174

Plaintiff stated that he observed employees of Swindell-Dressler, Ragnar Benson, Morrison Construction and United States Steel working in the basement; that Swindell-Dressler men were working in the far south end of the basement near the conveyer belt; that United States Steel employees were welding on the south side of the doorway; and that the only people seen north of the doorway in the six days he worked there were employees of Morrison and that although they were welding they were not welding close to the doorway. Finally, the witness testified that although the cable was of the type used for welding, he couldn't be sure what it was being used for; that he had also been forced to raise the smaller bases to clear the obstacles in the area but that he did not observe the cable on the prior two trips; that he did not know whether the cable was there on the prior two trips because he was not looking up at the ceiling and that he did not see anyone working in the area between his trips.

William Faisan, a safety engineer for United States Steel, was called by the plaintiff. He testified that he was the safety engineer for United States Steel at the South Chicago Works in June of 1958; that he did not find out about the accident until February of 1959 at which time he investigated it; that in June of 1958 he was in the area where the accident occurred daily to determine safety and found that the area was well lit but could recall no overhead welding cables strung in the basement. He stated that he could not say whether there was any welding equipment in the area on June 10 but welding was going on from time to time. He said that United States Steel had used welding equipment in their work in the basement but he did not know whether employees of Morrison Construction had done any welding there. He stated that United States Steel safety rules forbade the stringing of welding cables which might foul a passage.

175

Hardin McKee, an employee of Swindell-Dressler, testified that he was a labor foreman for Swindell-Dressler in June of 1958; that plaintiff was under his supervision at the South Works of United States Steel; that plaintiff called his attention to the accident when he came into the basement where plaintiff was working; that he only glanced at the cable from six to ten feet away but that it looked to him like a rusty steel cable rather than a welding cable. He said that he saw only Swindell-Dressler employees in the area and that he did not remember any request from Morrison employees to move any bases.

Michael J. McCarthy, project manager for Ragnar Benson. This witness testified that William Faison, United States Steel's safety engineer, was in charge of overall safety on the job.

Henry Wolfe, superintendent of the construction storehouse of the American Bridge Division of United States Steel, testified that plaintiff's exhibit was not the size of welding cable used by American Bridge; that he had been involved in storing these goods for American Bridge since 1946 and they always used three-quarter inch rather than a one-inch cable.

Douglas Kingman, job supervisor and engineer for Morrison Construction, testified that during the period in question Morrison was installing piping in the soaking pits under a contract with Swindell-Dressler; that Morrison did welding in the basement but could not say if it was on June 10; that he did not recall seeing welding equipment or cables in the basement; that no more than one or two Morrison employees were doing welding during this period and that other companies, including American Bridge, were doing welding.

Charles Banhaam, Jr., general foreman for Morrison, testified that he was present spasmodically; that the basement was poorly illuminated; that only one or two Morrison employees were doing welding; and that Morrison strung its welding cables only on the floor.

James R. Morrison, president of Morrison Construction Co., testified that Morrison often welded pipes together; that the company never strung welding cables overhead between existing structures but always employed a special wooden frame. He said plaintiff's exhibit differed from the type of welding cables his company used in that Morrison used three-quarter inch cable and Exhibit 1 was seven-eighths inch and Morrison's cable was completely black while Exhibit 1 was black with speckles.

It should be noted that the cable introduced as Plaintiff's Exhibit 1 is not the actual cable which caused the accident but is only similar to it.

OPINION

A. The Negligence Claim

(1) Defendants argue that there was no evidence that defendant was guilty of negligence because (a) there was no evidence that defendant allowed and permitted said cable to remain at a dangerous height and (b) there was no direct evidence that it erected or strung the cable. There is no direct evidence as to who erected the cable but there is sufficient circumstantial evidence to support the jury's conclusion that United States Steel did string the cable.

 The uncontradicted testimony of plaintiff establishes that United States Steel was doing welding work in the basement near the accident site on the day of the accident. William Faisan, safety engineer in the employ of United States Steel, testified that United States Steel was doing welding in the basement but did not recall if any was going on the day of the accident. He did not learn of the accident until seven months afterward. There was also evidence that the cable in question was a welding cable; the only other men engaged in welding were employees of Morrison Construction Co.[2] and they were

---

[2] Swindell-Dressler did no welding work. Ragnar Benson strung no cables overhead and their welding work had been completed

working in another area of the building, a considerable distance from where the accident occurred; this area was separated by solid concrete walls from the place where the cable was. There was also evidence that Morrison did not use the type of cable described by plaintiff; that Morrison's practice was to support cables with wooden troughs; and that Morrison specifically denied that it had strung any cables overhead. Defendant proffered no testimony as to its practice in stringing cables nor was there any denial that it had strung the cable that caused the accident. Defendant's only witness testified that welding cable used by defendant was "approximately ¾ inch" in diameter and that one inch cable was not used. On cross-examination he stated that cable similar to Exhibit 1 (which was described by plaintiff as one inch cable) was not used by defendant for welding; that it may be used in the plant but it was not stocked in his storehouse. Although there was no direct evidence that defendant installed the cable, the jury could find from the circumstantial evidence that defendant did install it and was thereby guilty of negligence. See Gerke v. Fancher, 57 Ill App 651, 658.

However, defendant contends that there were judicial admissions by plaintiff that defendant did not erect the cable and that these admissions were made, firstly, in plaintiff's answers to written interrogatories and, secondly, in plaintiff's counsel's closing argument to the jury.

██ Plaintiff's counsel in answering defendant's interrogatories stated "upon information and belief" that the cable was installed by Morrison Construction Company or Ragnar Benson, Inc. or Northern States Company, Inc. and the cable was owned by Morrison or Rag-

and their men and equipment removed. Northern States Co. had welding equipment only above the basement. Both of the latter companies were found not guilty by direction of the court. The jury found Morrison Construction Co. not guilty.

nar Benson. Rule 201(i) of the Supreme Court Rules (Ill Rev Stats 1967, c 110A, § 201(i)) provides that "[d]isclosure of any matter obtained by discovery is not conclusive, but may be contradicted by other evidence." Answers to interrogatories may be used in evidence to the same extent as depositions of an adverse party. Ill Rev Stats 1967, c 110A, § 213(f). Discovery depositions may be used only as provided for in Ill Rev Stats 1967, c 110A, § 212(a):

> (1) for the purpose of impeaching the testimony of the deponent as a witness in the same manner and to the same extent as any inconsistent statement made by a witness;
> (2) as an admission made by a party or by an officer or agent of a party in the same manner and to the same extent as any other admission made by that person;
> (3) if otherwise admissible as an exception to the hearsay rule; or
> (4) for any purpose for which an affidavit may be used.

Therefore the answers to the interrogatories were not judicial admissions.

■ Defendant also claims that plaintiff's counsel made a judicial admission in closing argument by arguing that the jury could conclude from the evidence that Morrison Construction Company put up the cable and by a further statement that Morrison "is liable for this cable, the way it was strung" and that Morrison caused the accident. In Sabo v. T. W. Moore Feed & Grain Co., 97 Ill App2d 7, 19–20, 239 NE2d 459, plaintiff sued Cox, the driver of one car, and Moore (the owner of the other) and Humphreys (the driver of Moore's car) for personal injuries resulting from a collision between the cars of the defendants. Moore and Humphreys contended on appeal that plaintiff's counsel's statements in closing

179

argument constituted a judicial admission. The court stated:

> Plaintiff's counsel stated that he was particularly impressed with Humphreys' truthfulness, but Cox had consistently lied; that he could not, in good conscience, state that he felt that Humphreys was at fault, or that the truck, prior to the collision, had been on the wrong side of the road.

Unless the statements of counsel constitute judicial admissions, they would not serve to relieve defendants of liability. In Rosbottom v. Hensley, 61 Ill App2d 198, at page 215, 209 NE2d 655, the Appellate Court said: "Judicial admissions must be distinguished from evidential admissions in that the former are binding and are considered to be incontrovertible. They include pleadings in the case, admissions in open court, stipulations, and admissions made pursuant to requests to admit. Cleary Handbook of Illinois Evidence, 1963, secs 5.1 and 17.12. In the dictionary denotation, a judicial admission is a formal act of the party or his attorney in court, dispensing with proof of a fact claimed to be true and is used as a substitute for legal evidence at the trial. Black's Law Dictionary, 1944." In our opinion the statements made by counsel were not judicial admissions and do not exculpate the defendants. We have examined the authorities cited by defendants Nowak v. Schrimpf, 44 Ill App2d 309, 313, 194 NE2d 547 (1963); People v. Hilltop M. M. Co., 300 Ill 564, 571, 133 NE 303 (1921); Deffler v. Loudenback, 233 Ill App 240 (1924); Kirchheimer v. Barrett, 125 Ill App 56 (1906); and Parker v. Louisville and N. R. Co., 230 Ill App 259 (1923) and find them so clearly distinguishable as to require no further discussion.

We conclude that the statements in the instant case were not judicial admissions.

██ ██ Defendant has also argued that it had no notice of the existence of the wire, either actual or constructive. Although we have determined that the verdict was supported by evidence from which it was reasonably inferable that defendant did erect the cable, we will nevertheless consider whether the jury could have found defendant guilty of negligence on the basis of constructive knowledge of the existence of the cable. Both parties cite Donoho v. O'Connell's, Inc., 13 Ill2d 113, 118, 148 NE2d 434, for the proposition that:

> [I]f the substance [or object] is on the premises through acts of third persons, the time element to establish knowledge or notice to the proprietor is a material factor. Schmelzel v. Kroger Grocery and Baking Co., 342 Ill App 501.

Defendant argues that if the cable was strung in the period between the trip on which plaintiff was injured and the immediately preceding trip (a time of about thirty minutes) then insufficient time had elapsed to impose constructive notice on United States Steel. We agree with this contention. Defendant next urges that since plaintiff has not proven that the cable was strung at an earlier time it must be assumed that the cable was strung during the thirty-minute period. We disagree with this contention. The fact that plaintiff did not strike the cable on previous trips is explained by the fact that he was carrying smaller and lower loads on those trips; thus it is not a necessary conclusion from such evidence that the cable was not strung at that location before the next-to-last trip. Next, there was testimony that no one, other than plaintiff, had been working in the room of the accident that day; that prior to that date Morrison em-

ployees were working in that room; that there was a good deal of welding going on in the vicinity prior to the date of the accident. The jury could find from such evidence that the welding cable had been strung previous to the day of the accident.

■■ (2) Defendant further argues that plaintiff failed at law to prove his freedom from contributory negligence. Defendant relies solely on plaintiff's testimony that he was not looking directly ahead in the direction in which he was going on the trip on which he was injured. In response to a special interrogatory, the jury found the plaintiff free from contributory negligence. The cases cited by defendant are not applicable to the instant situation. There is no question that a person driving a moving vehicle has a duty to keep a lookout for objects and persons ahead of him but the type of lookout to be kept depends on the circumstances in which the vehicle is being operated. See Rosenthal v. Chicago & A. R. Co., 255 Ill 552, 555–556, 99 NE 672, requiring reasonable care in the circumstances. In the instant case the greatest foreseeable danger lay in running over items strewn about the floor (including explosive acetylene bottles) and it is precisely a lookout for such items that plaintiff was keeping. Further, plaintiff had no reason to expect danger from above [3] because there was an established regulation of defendant, upon which plaintiff could reasonably rely, that there should be no overhead wires or cables. Thus the jury's finding on the special interrogatory finds support in the evidence. Further, in our opinion it was not against the manifest weight of the evidence.

■ (3) Defendant next points out that the verdict against defendant was for $25,000 and that the verdict in favor of U. S. Steel as third-party plaintiff was for

---

[3] See Miller v. Burch, 254 Ill App 387, 392; Chicago Telephone Co. v. Commercial Union Assur. Co., Ltd. of London, 131 Ill App 248; Prater v. Veach, 35 Ill App2d 61, 181 NE2d 739.

$5,000 (set aside by the trial judge who granted a judgment notwithstanding the verdict in favor of third-party defendant Swindell-Dressler Corporation). According to defendant this inconsistency in amounts requires a new trial. In Horton v. Moore-McCormack Lines, Inc., 326 F2d 104, there was a verdict against Moore-McCormack for $80,000 and a verdict for only $4,300 on the third-party claim. The court held that although the verdicts were inconsistent there was no reason to believe that there was any error in the main action and that therefore there was "no justification for remanding for a new trial of the main action."

 (4) The defendant also urges that the court below erred in not giving two requested instructions to the jury. We have examined the proffered instructions and find that the court properly refused to give them since the given instructions adequately presented the issues to the jury.

We find that defendant was not entitled to a directed verdict (Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504) and that verdict was not against the manifest weight of the evidence. (Hitt v. Langel, 93 Ill App2d 386, 397, 236 NE2d 118.) We affirm the judgment in the main action.

B. The Indemnity Claim

The jury returned a verdict for $5,000 in favor of U. S. Steel on its third-party complaint against Swindell-Dressler Corporation. The trial judge entered a judgment notwithstanding the verdict in favor of Swindell-Dressler. U. S. Steel appeals from that judgment and requests that we reverse that judgment and that we remand with directions to sustain the motion of third-party plaintiff to amend the verdict of the jury in its favor and against third-party defendant-appellee by increasing the amount of said verdict from $5,000 to $25,000 and for entry of judgment for said amount and for costs and interest from April 4, 1966.

The contract between U. S. Steel and Swindell-Dressler provided in part:

> Contractor shall save Owner harmless from any and all claims, . . . growing out of injury to . . . any of Contractor's employees . . . while on or about Owner's premises in connection with any matters relating to the performance of this contract.

In the pleadings it was admitted that:

> On or about the 10th day of June, 1958, Donald Deel, the plaintiff herein, was an employee of said Swindell-Dressler Corporation, and was on the premises of the South Works of said United States Steel Corporation in connection with and solely by virtue of the aforementioned contract.

Third-party appellee contends that the indemnity provision is not specific enough to impose liability on it for the negligence of the other party. Appellant argues that the broad terms of the indemnification do impose such liability, citing Russell v. Shell Oil Co., 339 Ill App 168, 89 NE2d 415; Northern States Co., Inc. v. A. Finkl & Sons Co., 8 Ill App2d 419, 132 NE2d 59; Newberg Const. Co. v. Fischbach, Moore & Morrissey, Inc., 46 Ill App2d 238, 196 NE2d 513, and others. In the recent case of Spurr v. La Salle Const. Co., 385 F2d 322 (7th Cir 1967) in construing an indemnity provision the court said at page 330:

> The argument suggests that a specific reference to liability arising out of the indemnitee's negligence is required. General inclusive language, has, however, been held sufficiently explicit in decisions of Illinois appellate courts and of this court, applying Illinois law. [Citing Gay v. S. N. Nielsen Co. (1958), 18 Ill App2d 368, 152 NE2d 468, and DeTienne v. S. N. Nielsen Co. (1963), 45 Ill App2d 231, 195 NE2d 240.]

In Patent Scaffolding Co. v. Standard Oil Co. of Indiana, 68 Ill App2d 29, 41, 215 NE2d 1, the court stated:

> As was said in Northern Pac. Ry. Co. v. Thornton Bros. Co., 206 Minn 193, 288 NW 226, 227, if this sort of agreement were not applied to the negligence of the indemnitee, "there would be but little remaining purpose of the promise of indemnity."

We conclude that the clear language of the indemnification in the instant case covered "any and all claims . . . growing out of injury to . . . any of Contractor's employees . . . while on or about Owner's premises" and that this coverage extended to injuries caused by the indemnitee's negligence, and specifically it covered the injury of plaintiff in this case.

▮ The judgment in favor of plaintiff and against United States Steel Corporation in the sum of $25,000 is affirmed and the judgment in favor of Swindell-Dressler Corporation and against United States Steel Corporation on its third-party complaint is reversed. If there were to be a new jury trial as to the third-party complaint, there would be no issue of either liability or damages for decision by the jury, and it would be incumbent upon the court to direct a verdict in favor of the third-party plaintiff for the full amount of the judgment against it in the basic action. No useful function would be served by such a "jury trial." We therefore remand the third-party cause with direction to enter judgment against the third-party defendant for $25,000. We consider this action on our part to be within our authority under Supreme Court Rule 366(a)(5) (Ill Rev Stats 1967, c 110A, § 366(a)(5)) which states that we may exercise the power to "grant any relief . . . that the case may require." See Horton v. Moore-McCormack Lines, Inc., 326 F2d 104 (2nd Cir 1964). The case of Ammesmaki v. Interlake S. S. Co., 342 F2d 627 (7th Cir 1965), relied on by the third-

party defendant to require us to grant a new trial in this circumstance, is distinguishable. There, the court departed from the rule of the Horton case because it was found in Ammesmaki that the "bases of liability" were not identical. Here, we have found that they were identical—the negligence of the third-party plaintiff—with the only addition in the third-party cause being the application of the terms of the indemnity contract. In view of our decision, this results necessarily in liability of the third-party defendant as a matter of law.

Affirmed in part, reversed and remanded in part with directions.

McCORMICK and ENGLISH, JJ., concur.