FRANK GATTO, Adm'r of the Estate of Sophie Gatto *et al.*, Plaintiffs and as Assignees of Third-Party Judgment-Appellees-Respondents, *v.* WALGREEN DRUG Co. *et al.*, Defendants-Third-Party Plaintiffs and Assignors of Third-Party Judgment-Appellees-Respondents—(CALUMET FLEXICORE CORPORATION, Third-Party Defendant-Appellant-Petitioner.)

(No. 59794;

First District (1st Division)—August 19, 1974.

*Rehearing denied November 4, 1974.*

Peterson, Ross, Rall, Barber & Seidel, of Chicago (Thomas K. Peterson, Robert S. Milnikel, and William W. Jones, of counsel), for Calumet Flexicore Corp.

Moriarty, Rose & Hultquist, Ltd., of Chicago (Maurice James Moriarty and Robert C. Hultquist, of counsel), for Walgreen Drug Co.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

This opinion presumes that the reader is familiar with the previous opinion of this court in this same litigation. (*Gatto v. Curtis*, 6 Ill.App.3d 714, 286 N.E.2d 541, *leave to appeal denied*, 52 Ill.2d 597.) In December of 1972, after conclusion of all appellate procedure, Calumet Flexicore Corporation (Calumet) petitioned the trial court for relief from the judgment for indemnity theretofore recovered against it by the owners of the beneficial interest in the land trust which held legal title to the property in question (collectively referred to in our previous opinion as "Lessors") which was assigned to plaintiffs. Thereafter a series of petitions, motions and amendments, which will be described later in

this opinion as required, were filed. All of these legal maneuvers, and many hearings before several judges of the circuit court, resulted in a stay of execution upon the judgment and in the entry of two orders; one on June 1, 1973, which denied petitions and motions theretofore filed by Calumet for vacation of the judgment against it, and another on August 21, 1973, which denied Calumet's motion to limit execution. Calumet has appealed from both of these orders.

No evidence was heard by the trial court although numerous affidavits and other documents were filed. In our opinion, the taking of evidence is not required for decision of the issues properly before us. Before stating the contentions of the parties in their briefs in this court, we will review and summarize the massive and repetitious record. We will attempt to confine this statement to material matters so that the reader of this opinion will not be confronted with the manifold difficulties encountered by the writer. Perhaps the subheadings will assist in presentation of the pertinent issues.[1]

## I.
### Previous Motions In The
### Appellate Court.

Our former opinion, filed June 26, 1972, noted the suggestion of the death of plaintiff, Sophie Gatto, on January 17, 1970. The same motion by the surviving plaintiff which made this suggestion set forth that Lessors had assigned the judgment which they had recovered against Calumet, in the amount of $120,000, to plaintiff. The parties to the assignment had agreed that if the judgment against Calumet was affirmed on appeal, $60,000 thereof would be paid to the Lessors plus one-half of the expenses of the appeal. In addition, there was a substitution of attorneys so that Lessors were represented in the initial appeal by the same counsel who represented the plaintiffs. (Moriarty, Rose & Hultquist, Ltd.) See 6 Ill.App.3d 714, 720, 721.

On July 17, 1972, Calumet filed in this court a motion to reduce the third-party judgment against it to $60,000, which sum was described as being the amount which the Lessors paid to plaintiffs in release and discharge of their obligation under the judgment. This motion was supported by an affidavit by one of the trial attorneys for Calumet. It stated that on July 6, 1972, he had been told in a telephone conversation

---

[1] The original plaintiffs involved in this litigation were Sophie Gatto and Frank Gatto, her husband. The former died on January 17, 1970. The latter became administrator of her estate. He is now the sole plaintiff, individually and as such administrator. This opinion will use singular and plural forms of plaintiff as required.

with one of the trial attorneys for plaintiffs, that prior to the death of plaintiff, Sophie Gatto, the judgment of plaintiffs against the Lessors was satisfied for the sum of $60,000. The affidavit further stated that one of the trial attorneys for the Lessors had refused to provide any information. Attorneys for plaintiff filed a response to this motion including an affidavit which set forth a totally different version of the telephone conversation. This affidavit stated that the assignment of judgment contained the full and complete agreement between plaintiffs and the Lessors. On August 3, 1972, this court ordered that the motion to reduce the judgment "be denied without prejudice and with the suggestion that this motion be presented to and acted upon by the Trial Court."

## II.
### Calumet's Petitions For
### Stay Of Execution, Etc.

On December 8, 1972, Calumet filed its petition for stay of execution in the trial court. This alleged that, despite repeated requests, opposing counsel representing plaintiff and the Lessors had refused to disclose to Calumet the details of the settlement agreement and arrangement between them other than the assignment of judgment. Calumet prayed a stay of execution pending determination of the questions of fact surrounding this situation. Plaintiff filed a motion to dismiss this petition, raising the point that the petition was barred by limitations. Ill. Rev. Stat. 1971, ch. 110, par. 72.

On December 13, 1972, Calumet filed a petition for reduction of the judgment against it to the amount actually paid to plaintiffs on behalf of the Lessors, for stay of execution and for leave to engage in discovery proceedings. This petition was expressly predicated upon section 72 of the Civil Practice Act and claimed fraudulent concealment from Calumet as the basis for delay in seeking relief. Ill. Rev. Stat. 1971, ch. 110, par. 72(3).

On January 19, 1973, Calumet filed an amended motion and a lengthy amended petition. This petition also prayed for discovery, for relief under section 72 of the Civil Practice Act and for partial satisfaction of the judgment against it to conform to the amount actually paid by Lessors to plaintiff.

## III.
### Subsequent Proceedings And The
### Agreement Not To Execute, Dated
### August 1, 1969.

After the filing of the above pleadings, which included a large number of exhibits such as other motions, affidavits and even briefs, which need

not be described in detail, a lengthy hearing was conducted by the trial court on February 15, 1973. After studying the pleadings and all other matters and hearing argument of counsel, the court announced that he would enter an order granting counsel for Calumet the right to take depositions of certain parties on written interrogatories.

On February 22, 1973, before the court had entered any order, counsel for plaintiff communicated with the attorney for Calumet, and with the trial judge. The lawyers met for a conference with the judge. Counsel for plaintiff there tendered to the attorney for Calumet a copy of a five-page agreement handprinted on legal size ruled paper of the type frequently used by attorneys, signed by plaintiffs Frank Gatto and Sophie Gatto, now deceased, and having their signatures on the margin of each page. The agreement was witnessed by two trial attorneys for plaintiffs. The agreement is dated August 1, 1969, which was a Friday. The trial of the original action in the circuit court had commenced on Monday, July 28, 1969, and the cause remained on trial until judgment was entered on the jury's verdicts on Wednesday, August 13, 1969.

This agreement provided that in consideration of the sum of $80.000, receipt of which was acknowledged by Frank and Sophie Gatto, from the Lessors, said plaintiffs agreed not to execute on any judgment against the Lessors rendered in the cause then on trial, or in subsequent litigation involving the same occurrence, in any amount in excess of $80,000. Plaintiffs also acknowledged receipt of $15,000 paid by other defendants Louis F. Sladky and others, lessees of the involved premises, in consideration of which plaintiffs agreed not to execute in any amount in excess of $15,000 against these defendants.

The agreement further recited the pendency of third-party actions and counterclaims brought by both of said groups of defendants and provided that in the event of recovery by the Lessors in such proceedings, whether in excess of or less than $80,000, any amount up to and including $80,000 should become the property of the Lessors, or the entity which had advanced $80,000 to plaintiffs, and any amount in excess should be paid to plaintiffs. A similar covenant was stated regarding payment by the lessees to plaintiffs. The agreement also provided that if judgments were rendered in such third-party action, or counterclaims, the respective defendants had the option of collecting the judgment themselves, or permitting plaintiffs to do so at their own expense.

The agreement also contained a paragraph which was deleted therefrom. This deletion was acknowledged by the signatures of the trial attorneys for plaintiffs, for the Lessors and for the lessees, Louis F.

Sladky and other defendants. (The jury had returned a verdict in favor of the lessees, Sladky, *et al.*, and against plaintiffs.)

The record shows that the sum of $80,000 mentioned in the agreement was actually paid to plaintiffs or their attorneys. A copy of the insurance draft by which this was accomplished was produced before the trial judge.

### IV.

*Plaintiff's Motion for Summary*
*Judgment On Calumet's Second*
*Amended Petition.*

The above itemization of pleadings filed is not yet complete. On March 16, 1973, plaintiff filed a motion for summary judgment. This motion set forth that the attorney for Calumet had knowledge of the payment made during trial and knew the exact amount of that payment more than 2 years prior to the filing of his petition in this proceeding. The motion prayed for summary judgment on the ground that there was no issue of fact between the parties but that the limitation period contained in section 72 of the Civil Practice Act had expired. On April 13, 1973, Calumet filed a reply to this motion in which knowledge of the payment was denied and the allegation was made that counsel for plaintiff had repeatedly refused to furnish the necessary information. The reply further set out that the proceeding was not brought under section 72 of the Civil Practice Act, the facts surrounding the transaction were fraudulently concealed and discovery proceedings were required.

In addition, on April 13, 1973, with leave of court, Calumet filed a second amended petition. This document alleged that the agreement between plaintiffs and the Lessors had been fraudulently concealed so that the entire initial jury trial "was a sham and a charade" and the resulting verdict and judgments were void, thus making the third-party judgment against Calumet also void. Calumet prayed for vacation of the judgments against the Lessors and of the third-party judgment in favor of the Lessors and against Calumet, for dismissal of the original and third-party complaints and for full discovery. Calumet further requested relief by way of an order for the attorneys for plaintiff and the Lessors to respond to the petition in their individual capacities; for taxation of all attorneys' fees, costs and other expenses incurred by Calumet against the attorneys; for exemplary damages; and for full discovery.

## V.
### *The Final Order Of June 1, 1973.*[2]

After hearing argument of counsel and having examined briefs and other documents, the court entered the final order on June 1, 1973, disposing of Calumet's second amended petition to vacate the judgments and for other relief. The court found that there was nothing to indicate that the petition came within section 72(3) of the Civil Practice Act, providing that time be tolled because of fraudulent concealment, but that the court had jurisdiction "to determine the exact amount of the judgment" and it was necessary in making that determination to examine the legal effect of the agreement not to execute and the assignment of judgment. The court accordingly ordered that plaintiff's motion for summary judgment was taken as a response to Calumet's second amended petition but was not ruled upon because considered moot; the petition for vacating the judgments and dismissing plaintiff's complaint and the third-party complaint against Calumet was denied; the petition for discovery and for imposition of sanctions against those persons alleged to have participated in the purported scheme to defraud Calumet was denied; the petition requiring various parties and corporations to respond thereto was denied; the petition for an order taxing, as damages, various claimed costs and expenses sustained by Calumet was denied; the petition for further relief was also denied. The order directed that the stay of execution remain in effect until further order of the court. Calumet was granted leave to file its motion to limit the amount for which plaintiff may execute and plaintiff was directed to file responsive pleadings thereto with the cause being set for later hearing.

## VI.
### *Calumet's Motion To Limit Execution And Motion Of Plaintiff To Dismiss.*

On June 15, 1973, Calumet filed a motion to limit execution. This lengthy motion reargued the entire matter including a citation of legal authorities. In effect, it moved the court to fix the amount to be paid in full satisfaction of the third-party judgment against Calumet and to limit execution or other process to the amount thus found due.

---

[2] The record indicates that this order may have been entered on June 4, 1973. However, to avoid confusion we will follow the example of both counsel and use the date of June 1, 1973.

On July 2, 1973, plaintiff filed a motion to dismiss this motion.[3] This document discussed the legal authorities cited by Calumet and prayed that the motion be denied primarily for lack of jurisdiction. On July 9, 1973, Calumet filed a reply to this motion to dismiss the previous motion of Calumet. This document is primarily a repetition of the arguments already made by Calumet.

## VII.

### The Memorandum Opinion
### By The Trial Court.

On July 31, 1973, after another lengthy hearing, the trial court filed a memorandum opinion which entered into a careful analysis of the matter before the court. It concluded that Calumet's motion to limit execution did not come within section 72 of the Civil Practice Act since it was a proceeding concerning satisfaction of the judgment as distinguished from motions to modify the judgment which were theretofore denied. The learned trial judge then analyzed the agreement not to execute in the light of the opinion of the Supreme Court in *Reese v. Chicago, B. & Q. R.R. Co.*, 55 Ill.2d 356, 303 N.E.2d 382, which had been filed a short time previously, on June 25, 1973. The memorandum opinion found that there was no prejudice or fraud against Calumet in the original trial and that no specific charges of fraud had ever been made concerning defects in the trial. The memorandum accordingly adopted the rationale of *Reese*, held the agreement not to execute valid and denied Calumet's motion.

## VIII.

### The Final Order Of August 21, 1973.
### Calumet's Notice Of Appeal Filed
### September 13, 1973.

On August 21, 1973, Calumet filed a lengthy motion for rehearing or for clarification of the memorandum opinion. On August 21, 1973, the court entered a formal order denying Calumet's motion to limit execution in accordance with the memorandum opinion. On September 13, 1973, Calumet filed its notice of appeal praying reversal of the orders of June 1, 1973, and August 21, 1973.

---

[3] This "motion to dismiss" actually consists of objections by plaintiff to the motion of defendant. We are aware of no statute or other legal authority which authorizes a "motion to dismiss" a previous motion.

## IX.

### Contentions By The Parties In This Court.

Calumet contends that the trial court had a duty to inquire and to allow inquiry by Calumet into the merits of the allegations of fraud before exercising its jurisdiction to deny relief. This is supported by the corollary proposition that in the absence of a justiciable controversy a trial is a fraud upon the court. Calumet also urges that if execution on the judgment against it is to be allowed, the trial court erred when it denied the motion to limit execution. In response, plaintiff contends that the agreement dated August 1, 1969, as amended by the assignment of judgment dated January 27, 1970, is a loan agreement of the kind held proper by the Supreme Court of Illinois. This contention is supported by two corollary principles that the parties intended a loan agreement as distinguished from a settlement and the execution of this type of agreement does not require dismissal of the lender. Plaintiff also urges that the record is devoid of evidence that the agreement of August 1, 1969, or the assignment of judgment affected the judgments entered against Calumet; there is no evidence of fraudulent concealment which would constitute the type of extrinsic fraud which would prevent the court from acquiring jurisdiction and would constitute grounds for vacating the judgment. Plaintiff finally urges that Calumet has waived its right to argue matters relating to alleged fraudulent concealment since the trial court's order of June 1, 1973 was final and appealable and the only remedy available to Calumet is found in section 72 of the Civil Practice Act.

## X.

### Opinion

We are required at the outset to solve a jurisdictional problem. As above noted, the trial court's order of June 1, 1973, disposed of all prior pleadings by Calumet (to and including the second amended petition filed April 13, 1973) insofar as they sought relief initially predicated upon vacation of the judgment against Calumet. The order entered August 21, 1973, denied the written motion of Calumet to limit execution. Calumet filed its notice of appeal on September 13, 1973. This notice prayed for reversal of both orders. The notice was filed within 30 days after the second order but far in excess of 30 days after the earlier order. See Supreme Court Rule 303(a), 50 Ill.2d R. 303(a).

■■ Plaintiff filed in this court a motion to dismiss the appeal based upon the tardiness of the notice of appeal with reference to the order of June 1, 1973. Calumet responded. Upon due deliberation, we denied this motion. The point is now urged again in plaintiff's brief and there is

a full response in the reply brief of Calumet. In our opinion, as this court has quite recently held, the matter of our "jurisdiction is *always* open, and the court may of its own motion dismiss an action where want of jurisdiction appears." *Weber v. Northern Illinois Gas Co.*, 10 Ill.App.3d 625, 629, 295 N.E.2d 41, citing *Village of Glencoe v. Industrial Commission*, 354 Ill. 190, 188 N.E. 329.

After examination of the record and briefs, we have concluded that we have no jurisdiction regarding the attempted appeal from the order of June 1, 1973, but we do have jurisdiction as regards the appeal from the order of August 21, 1973.

As shown, the two orders dealt with diametrically different categories of relief. The order of June 1, 1973, decided only matters raised in petitions and motions which would be cognizable under section 72 of the Civil Practice Act. The order of August 21, 1973 dealt with a type of relief involving the inherent power of the court to control and deal with its own process. Since the attempt to vacate the judgment was not made until far more than 30 days after the rendition thereof, the petition necessarily constituted a new action under the authority of section 72. This conclusion followed regardless of the label affixed to any or all of these petitions, although in certain instances relief was specifically claimed under section 72.

■■ In this regard, it is apparent that section 72 of the Civil Practice Act is intended to eliminate all previously existing remedies for obtaining relief from final judgments more than 30 days after their entry. Thus, it has been held that motions seeking relief from final judgments, which are made after expiration of the 30-day period stated in the Civil Practice Act, are necessarily limited to section 72 and must be construed as an attempt to use this section. *Schuman v. Department of Revenue*, 38 Ill.2d 571, 573, 232 N.E.2d 732; *Trisko v. Vignola Furniture Co.*, 12 Ill.App.3d 1030, 1033, 299 N.E.2d 421, and *Mehr v. Dunbar Builders Corp.*, 7 Ill.App.3d 881, 883, 289 N.E.2d 25.

■■ Since all of the proceedings taken prior to June 1, 1973, and disposed of by the order entered on that day, were under the legal authority of section 72 of the Civil Practice Act, the order of June 1, 1973, was necessarily final and appealable. Rule 304(b)(3) of the Supreme Court (50 Ill.2d R. 304(b)(3)) specifically makes appealable, without special finding of any kind, "A judgment or order granting or denying any of the relief prayed in a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat., ch. 110, § 72)." The notice of appeal filed September 13, 1973, was impotent to vest jurisdiction in this court for review of the order of June 1, 1973. In this regard, the situation presented here by the filing of one notice of appeal directed to two separate orders

is analogous to the situation in *Weber v. Northern Illinois Gas Co.*, 10. Ill.App.3d 625, 295 N.E.2d 41, in which this court dismissed an attempted appeal involving one count of a complaint and proceeded with the appeal involving the other count. We arrive at a similar decision here and hold that we have no jurisdiction to consider any of the issues raised by Calumet in the attempted appeal from the order of June 1, 1973.

We have jurisdiction over the issues raised by the notice of appeal from the order entered August 21, 1973, which denied the motion of Calumet to limit execution. This inquiry involves, first, the legal issues surrounding the question of the validity and effect of the agreement not to execute. We have above summarized the provisions of this agreement entered into on August 1, 1969, between plaintiffs and the Lessors and witnessed by their respective attorneys. Ascertainment of the legal effect of this agreement requires analysis of *Reese v. Chicago, B. & Q. R.R. Co.*, 55 Ill.2d 356, 303 N.E.2d 382.

In *Reese*, plaintiff brought suit against the Railroad and Koehring Company. The case against the Railroad was based upon the Federal Employers' Liability Act. Plaintiff sought to impose strict liability upon Koehring, the manufacturer of an allegedly defective crane. The Railroad filed a counterclaim against Koehring for indemnity. Immediately before trial, plaintiff and the Railroad executed an agreement. The Railroad loaned plaintiff $57,500 which she promised to pay, without interest, from any judgment that she would be legally entitled to collect against Koehring. The obligation to repay the loan attached only to the first $57,500 thus to be collected and not to any amount in excess thereof. On plaintiff's motion, the Railroad was then dismissed as party defendant without prejudice. After trial by the court, judgment was entered against Koehring for $149,000 and in favor of Koehring on the counterclaim by the Railroad. The trial court ruled that the loan agreement was actually a covenant not to sue and deducted the amount of the loan from plaintiff's judgment. This court (Second District) held to the contrary and differentiated the loan agreement from a covenant not to sue. The court held that effect should be given to the "plain terms" of the loan agreement. (5 Ill.App.3d 450, 456, 457.) The supreme court affirmed this result.

In the case before us, plaintiffs agreed that they would not execute on any judgment against the Lessors in excess of $80,000. The first $80,000 which might be recovered from any judgment was to be paid directly to the Lessors but any amount in excess thereof would become the property of plaintiffs. There are, however, significant and governing distinctions between the case before us and *Reese*. In *Reese*, as in the instant case, the agreement was between plaintiff and an alleged tort-feasor who

was a party defendant to plaintiff's suit. In *Reese,* the contracting defendant was dismissed and plaintiff was left to pursue her remedy against the remaining defendant. In the case at bar, plaintiffs had no direct cause of action against Calumet, which had not been joined as a party defendant to their complaint. The sole and only liability sought to be enforced against Calumet is that of a third-party defendant indemnitor under a theory of active-passive negligence and the attempted imposition of this liability was invoked by a third-party plaintiff. Thus, in *Reese,* the two parties involved with plaintiff were codefendants. In the instant case, the two parties are not codefendants but occupy the legally separate relationship of indemnitor and indemnitee.

Furthermore, in *Reese,* after trial there was a judgment holding Koehring not liable as indemnitor. In the case before us, the jury found against Calumet as indemnitor and in favor of the Lessors as indemnitees and that judgment has been affirmed by this court with approval of that ruling by the highest court in Illinois. In *Reese,* there was no limitation, beyond adequacy of damages, upon the amount which plaintiff could recover from Koehring as a party defendant. In the case before us, the relation between Calumet and the Lessors, being solely one of indemnity, necessarily limited the liability of Calumet to the amount of the liability actually imposed upon the Lessors as third-party plaintiffs-indemnitees.

The above discussion regarding Reese is equally valid and applicable to other cases dealing with so-called loan agreements such as *American Transport Co. v. Central Indiana Ry. Co.,* 255 Ind. 319, 264 N.E.2d 64, and *Northern Indiana Public Service Co. v. Otis,* 145 Ind.App. 159, 250 N.E.2d 378. Regardless of the degree of congruity between the agreement before us and those in *Reese* and the other cited cases, the particular legal relationship existing between the parties here prevents imposition upon Calumet of any liability greater than that assumed and discharged by its indemnitee. The liability of the indemnitor is necessarily equal to and coextensive with that of the indemnitee.

■■ In situations in which a judgment in favor of plaintiff against a defendant tort-feasor is reversed, it follows necessarily that an accompanying judgment for indemnity in favor of this defendant, as third-party plaintiff, against a third-party defendant must also be reversed, "* * * as it is dependent upon the outcome of the case in chief." (*Jones v. S. S. & E. Corp.,* 112 Ill.App.2d 79, 97, 98, 250 N.E.2d 829, citing *Bohannon v. Ryerson & Sons, Inc.,* 15 Ill.2d 470, 475, 155 N.E.2d 585.) In situations in which the judgment against a third-party defendant, who is the indemnitor, is less than the judgment against the defendant (third-party plaintiff) who is the indemnitee, the amount of recovery against the third-party defendant is properly increased so as to accomplish complete

indemnity. (*Deel v. United States Steel Corp.*, 105 Ill.App.2d 170, 185, 245 N.E.2d 109.) The very essence of indemnity is to hold the indemnitee harmless. As a result of the application of the theory of indemnity, he should be relieved completely from his liability but he should not be permitted to make a profit at the expense of the indemnitor.

The agreement to limit execution which is before us thus necessarily presents, in the results which flow from its execution and performance, at least some aspects, of a settlement and release between plaintiffs and Lessors. Execution of the agreement and payment of the consideration of $80,000 by the Lessors thereunder operated to place a maximum limit upon the liability of the Lessors to plaintiffs. Under no circumstances, and regardless of any verdict that the jury might return, could Lessors be made liable to plaintiffs for a greater amount. Nor does the assignment to plaintiffs of the judgment in favor of the Lessors and against Calumet operate to modify this situation. This assignment represents merely an ill-conceived and abortive attempt to fasten a direct tort liability upon Calumet where no such claim was asserted against it and where the sole and exclusive source of its liability was a duty to indemnify. The door should not be opened in this manner so as to saddle an indemnitor with an unfair liability in excess of legal limitations.

We wish to make it clear that, in our opinion, the result above reached that Calumet is equitably entitled to relief concerning the extent of its liability as an indemnitor does not in any manner rest upon prejudice to Calumet during the trial of the action. On the contrary, there was no prejudice to the rights of Calumet during the trial. No situation developed at trial concerning the effect of the agreement upon any person along the lines suggested by the supreme court in *Reese* (55 Ill.2d 356, 364.) Our previous minute examination of the trial record, without knowledge of the existence of the agreement, impelled us to conclude that the judgment of liability for active negligence was properly entered against Calumet as an indemnitor. (See 6 Ill.App.3d 714, 731.) We cannot conceive that the agreement itself had any bearing upon this result or any effect upon the trial of the issues between plaintiffs and the Lessors. However, substantial prejudice resulted to Calumet in connection with the amount of recovery which is now sought to be enforced against it by execution presently stayed by order of the circuit court. It is manifest that, had the agreement been disclosed to the trial judge upon entry of judgment or at the hearing of the post-trial motion, Calumet would have had a proper hearing and could then have made a timely attempt to reduce the amount of the judgment for indemnity. In our opinion, such a hearing should have resulted in the allowance of proper credit to Calumet as above pointed out.

A study of all of the affidavits filed by both sides in support of various motions and petitions leads to the conclusion that there is a possibility that counsel for Calumet was generally aware of the existence of some arrangement between attorneys for plaintiffs and for the Lessors. However, he did not receive a copy of the agreement until the meeting held in the chambers of the trial court on February 22, 1973. An element which may have been partly responsible for this was the absence of proper contact between the attorneys representing the parties at the trial. There was obviously a mutual breakdown of communication between the opposing attorneys.

■■ However, we need not decide the extent of the knowledge of Calumet's counsel. The important and decisive element is that it is clear and certain that this agreement was not disclosed to any of the courts involved in this proceeding until February 22, 1973, virtually 3 years and six months after its execution. The agreement was not disclosed to the trial judge who presided over the original jury trial, to this court on the first appeal, to the Supreme Court in connection with the petition for leave to appeal and in other matters brought before it, or to any of three trial judges who heard some portions of the subsequent proceedings. The only portion of the transaction between these parties ever disclosed to any court until February 22, 1973, was the assignment of judgment which was entered into on January 27, 1970. The courts having the responsibility of insuring justice and fairness between these parties should have been given access to this agreement. See *People v. Burr*, 316 Ill. 166, 182, 147 N.E. 47. See also *People v. Sleezer*, 8 Ill.App.2d 12, 22, 23, 130 N.E.2d 302, quoting extensively from *Burr*.

■■ The only remaining issue goes to the manner in which the equitable relief of conforming its liability to true legal indemnity should be granted to Calumet. The question here does not involve vacation of a judgment or any additional relief commencing from this. The requested relief involves simply control by the court over its own process. In considering the legality of a rule of practice of the municipal court of Chicago concerning the issuance of a *capias*, this court stated the principle in one sentence: "A court always has control of its own process." (*Wilson v. Gill*, 279 Ill.App. 487, 491.) In *People ex rel. Mikel v. Illinois Racing Commission*, 310 Ill.App. 68, 72, 33 N.E.2d 893, this court cited with approval the statement of the principle made in *Sandburg v. Papineau*, 81 Ill. 446. In *Sandburg*, the supreme court made a clear statement of the applicable theory (81 Ill. 446, 448-449):

"There is no principle of law better recognized than that which gives to courts of record power over the process of their courts. It is essential to the administration of justice, and it by no means

depends upon statutory enactment, but the power is coeval with the common law courts; and such courts will recall their process and quash the same, when it is shown that it would be illegal or inequitable to permit its further use, and to allow it to be enforced. If a judgment were satisfied, and, through mistake or by design, an execution were to issue upon it, does any one suppose the court from which it issued is powerless to recall and quash it? Or if it was only partially satisfied, and an execution were to issue for the full amount of the judgment, would any one have the hardihood to say that the court could not order the credit to be indorsed on the execution? So the court has power, in all cases, to compel credits on judgments or executions, where it would be illegal or inequitable to proceed to collect the amount claimed. A court of justice will never permit a plaintiff, simply because he has acquired an unjust advantage by obtaining an execution, to retain and enforce it."

Perhaps the strongest additional and more recent authority bearing upon this situation is *Weaver v. Bolton,* 61 Ill.App.2d 98, 209 N.E.2d 5. There, plaintiff Weaver filed suit for personal injuries against Bolton and Andrew. She also sued the Giuseppe Verdi Society for Dram Shop Act violation in connection with intoxication of Bolton. Before trial plaintiff settled with the Society for $8000 and gave a covenant not to sue. All of the parties knew this. After trial, plaintiff recovered a judgment against Bolton for $20,000 and against Andrew for $10,000. After denial of post-trial motions, and more than 30 days after the judgments, Andrew filed a petition for credit of $8000 on the judgment against him. The trial court granted the credit but the order was reversed by this court (Second District). The court held that the petition for credit was not properly filed by Andrew under section 72 of the Civil Practice Act because he had full knowledge of the settlement before the entry of judgment and failed to advise the court of this. Consequently he had failed to exercise due diligence and his petition under section 72 could not be used to grant relief. The court then made the following statement which is most applicable to the case at bar (61 Ill.App.2d 98, 105):

"This does not mean, however, that the trial court was without jurisdiction to hear such petition. It had authority to make such orders and issue writs as were necessary to carry its judgments into effect and to render them operative. This power continued in the court until its judgments were satisfied, and the present proceeding pertained to the satisfaction of these judgments rather than their modification as that term is generally understood. Many such ques-

tions arise subsequent to judgment in which jurisdiction is to be exercised."

The decision in *Virginia v. West Virginia,* 246 U.S. 565, 591, 62 L.Ed. 883, 38 S.Ct. 400, cited by the appellate court immediately following the above excerpt teaches us, "That judicial power essentially involves the right to enforce the results of its exertion is elementary." Proceeding to exercise its jurisdiction over process and the execution thereof, completely aside from section 72, the court held that the assumption was proper, that the injuries caused by both defendants were several and, accordingly, that defendant Andrew should not have the benefit of the credit. The order granting credit was reversed and the cause remanded with directions that execution issue against Andrew in the full sum of $10,000.

To paraphrase the matter, in the situation here involved, the amount of the execution to be issued upon this judgment is subject to the legal and equitable control of the court. This inherent power of the court may be exercised in response to Calumet's petition for limitation of execution filed June 15, 1973. The relief granted here has no relation to the amount of the undisturbed judgment against Calumet but will operate upon the process of the court to be issued in connection with enforcement of the judgment.

■■ Our heritage of wisdom teaches us that to every thing there is a season and "a time to every purpose." This record convinces us that the time and the season for ending this litigation have truly come to pass. We abstain from review of the order of June 1, 1973, for lack of jurisdiction. The order of August 21, 1973, which denied relief to Calumet, is reversed and the cause is remanded with directions for the entry of a proper order directing the clerk of the circuit court of Cook County to limit execution on the judgment entered August 13, 1969, in favor of the Lessors (subsequently assigned to Frank Gatto and the late Sophie Gatto) and against Calumet Flexicore Corporation to $80,000 which said execution when issued by the clerk may also provide for properly taxable costs and interest in accordance with law.

Order of August 21, 1973, reversed and cause remanded with directions.

EGAN, P. J., and BURKE, J., concur.

*SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING*

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After the above opinion had been filed, Calumet filed a petition for rehearing. This petition was directed solely to that portion of the opinion

which provided for accrual of interest upon the judgment "in accordance with law." Calumet urged that this language be clarified and that the opinion be modified to provide that interest upon the judgment should be accrued upon the sum of $80,000, not from the date of entry of the judgment (August 13, 1969) but from the date that the terms of the agreement not to execute were first disclosed (February 22, 1973). This court entered an order requesting an answer to this petition. (Supreme Court Rule 367(d), 50 Ill.2d R. 367(d).) An answer to the petition has been filed in behalf of plaintiff and a reply to this answer was filed by Calumet.

The answer takes the position that the issue here is whether a judgment debtor is liable for interest on the judgment from the date of entry or from the date of finalization of the judgment. Plaintiff cites cases such as *Gnat v. Richardson*, 378 Ill. 626, 39 N.E.2d 337, and *Proctor Community Hospital v. Industrial Com.*, 50 Ill.2d 7, 276 N.E.2d 342. In *Proctor*, the circuit court had originally set aside an award made by the Industrial Commission. The supreme court had then, in a previous opinion, reversed the circuit court and reinstated the award. On further appeal, concerned with payment of interest, the court held that interest should accrue "from the date of the award, notwithstanding that at an intermediate level of review the award was overturned and on further review reinstated." (50 Ill.2d 7, 9, 10.) *Gnat* reached a rather similar result without comment or discussion.

The principles expressed in *Proctor* do not appear to have specific bearing upon the problem before us. The issue here is broader than a simple matter of interest computation in the event of an intervening reversal before ultimate affirmance of a judgment. In our opinion our problem here is more analogous to that decided in *Presbyterian Distribution Service v. Chicago National Bank*, 36 Ill.App.2d 1, 183 N.E.2d 525. There, the court held that statutory interest should run from the date of an amended decree because the exact amount owed upon the judgment had not been determined until disposition of the case following previous appellate procedure. The factor of inability of the judgment debtor to tender the amount due because of a lack of knowledge of this amount is operative in the case before us. The pertinent statute provides that the accrual of interest may be stopped during the pendency of an appeal or other proceedings if the judgment debtor makes a "tender of payment of judgment, costs and interest accrued to date of tender * * *." Ill. Rev. Stat. 1973, ch. 74, par. 3.

■■ We are impressed with the point raised by Calumet that it had no knowledge of the exact amount that had been paid to plaintiffs pursuant to the so-called agreement not to execute. This lack of knowledge ef-

fectively prevented Calumet from making any tender of payment. If we were to hold that interest commenced to run on the sum of $80,000 from the date of entry of the judgment, we would be rewarding concealment of the agreement from the court and encouraging such tactics for the future and we would simultaneously be penalizing Calumet unjustly for its failure to tender payment when the amount due was actually unknown. In our opinion the only equitable solution is to require payment of interest from and after February 22, 1973, the date of disclosure of the agreement.

Therefore, we will modify the above opinion solely by striking out from the last line thereof, the words "and interest in accordance with law" and by substituting:

"and interest on the sum of $80,000 from and after February 22, 1973 at the rate of 6% per annum as required by law."

Opinion modified accordingly.

EGAN, P. J., and BURKE, J., concur.