TIMOTHY P. KLIER, Plaintiff-Appellant, v. GREGORY A. SIEGEL *et al.*, Defendants-Appellees.

Second District   No. 2—89—0649

■■■■■

Opinion filed July 24, 1990.

Daniel J. Klier, of Chicago, for appellant.

Brian P. Shaughnessy, of Tressler, Soderstrom, Maloney & Preiss, of Wheaton, and John L. Schroeder and Susan D. Shivers, both of Connelly, Mustes, Palmer & Schroeder, of Chicago, for appellee Gregory A. Siegel.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Timothy P. Klier, appeals from an order of the trial court compelling the release and satisfaction of a judgment wherein defendants, Gregory A. Siegel and Stephen J. Bevilacqua, were allowed certain credits for advance payments made to plaintiff prior to the trial on damages. Under the facts of this case, we agree that the credits were permissible, and we, therefore, affirm.

On February 26, 1986, plaintiff filed a complaint against defendants, seeking money damages for personal injuries plaintiff received in an automobile accident which occurred on July 4, 1982. After a jury trial on the issue of damages only, defendants having admitted liability, the jury returned a verdict for plaintiff in the amount of $11,000, and judgment was entered on February 24, 1988.

Prior to the commencement of the lawsuit, defendants advanced certain payments to plaintiff for medical expenses and lost wages amounting to $5,250.52. On March 2, 1988, defendants tendered to plaintiff checks in the amount of $5,749.48, representing the amount of the judgment ($11,000) less advance payments of $5,250.52 made by an insurer of the defendants, and requested that a satisfaction of judgment be executed. On March 4, 1988, plaintiff's attorney returned the $5,749.48 to defendants and refused to execute a satisfaction of judgment.

On June 27, 1988, defendant Bevilacqua filed a motion requesting the court to apply a setoff of $5,250.52 to the judgment which would result in a balance of $5,749.48. Defendant also requested an order compelling plaintiff to execute a satisfaction of judgment. On July 28,

1988, the trial court found that it did not have jurisdiction to hear the matter; it characterized the motion as a remittitur and believed defendant's motion should have been brought within 30 days after judgment by means of a post-trial motion or possibly after 30 days from the entry of judgment under section 2—1401 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) if due diligence could be shown.

On February 28, 1989, defendants tendered to plaintiff checks totalling $5,924.24. These amounts represented the $11,000 judgment less payments of $5,250.52 advanced to plaintiff prior to trial plus nine days of interest and $162 in costs. Defendants again requested that plaintiff execute a release and satisfaction of judgment. On March 1, 1989, plaintiff's attorney returned the checks and refused to execute a satisfaction of judgment.

Defendants again petitioned the court, this time pursuant to section 12—183(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 12—183(b)), to enter an order of satisfaction of judgment. On March 29, 1989, the trial court granted defendants' petition conditioned upon the payment of $5,924.24 to the clerk of the court and ordered that such payment would be deemed full satisfaction and release of the judgment. The amount was paid to the clerk of the court.

On April 18, 1989, plaintiff petitioned the court to reconsider its order of March 29. Plaintiff's petition was denied on June 1, 1989. In its letter of opinion, the trial court found that there was sufficient evidence of the advance payments and that there was no dispute that the advance payments were meant to reduce the obligation owed by defendants to plaintiff. The trial court was careful to explain that it did not have jurisdiction to reduce the judgment, but, rather, pursuant to section 12—183(b), it was granting credits to defendants who demonstrated satisfaction of the judgment under that section.

On appeal, plaintiff contends that it was error for the trial court to compel a release of judgment, arguing that (1) the defendant did not tender the full amount by tendering $5,749.48, (2) the plain language of section 12—183(a) does not allow a court to give credit to a defendant for payments made prior to the filing of a lawsuit, and (3) the trial court did not have jurisdiction to "modify" a judgment more than 30 days after its entry by means of a credit or setoff.

The construction of section 12—183(a) as applied to the facts of this case appears to raise an issue of first impression in this jurisdiction. Section 12—183(b) reads in pertinent part:

"If the judgment creditor, his or her assigns of record or

other legal representative to whom tender has been made of all sums of money due him or her from the judgment debtor including interest, on any judgment entered by a court, willfully fails or refuses, at the request of the judgment debtor or his or her legal representative to execute and deliver to the judgment debtor or his or her legal representative an instrument in writing releasing such judgment, the judgment debtor may petition the court in which such judgment is of record, making tender therewith to the court of all sums due in principal and interest on such judgment, *** whereupon the court shall enter an order satisfying the judgment and releasing all liens based on such judgment." (Ill. Rev. Stat. 1987, ch. 110, par. 12—183(b).) There is virtually no case law construing this section or its predecessor (Ill. Rev. Stat. 1979, ch. 77, par. 68a(b)). *Peoples v. Carborundum Co.* (1984), 123 Ill. App. 3d 39, 41, 462 N.E.2d 829.

We do not believe, as plaintiff appears to argue, that defendant must tender all sums due only after a judgment has been entered in order to obtain an order of satisfaction of judgment, nor do we believe defendants were required to proceed only by way of a post-trial motion attacking the final judgment within 30 days or by means of a section 2—1401 petition within two years of the entry of judgment. These were not defendants' exclusive remedies. Our reasoning follows.

■ The rules of statutory construction require this court to determine and follow the intent of the legislature's acts. (*Carey v. Elrod* (1971), 49 Ill. 2d 464, 471, 275 N.E.2d 367.) It is a cardinal rule of construction that the intent and meaning of a statute are to be determined from the entire statute, and all its sections are to be construed together in light of the general purpose and plan, the evil intended to be remedied, and the object to be obtained; if the language is susceptible of more than one construction, the statute should receive the construction that will effect its purpose rather than defeat it. (*Orbach v. Axelrod* (1981), 100 Ill. App. 3d 973, 977-78, 427 N.E.2d 399.) Moreover, the consequences resulting from various constructions of the statute must be taken into consideration, and the court should select the construction which leads to a logical result and avoid one which the legislature could not have contemplated. *In re Marriage of Burke* (1989), 185 Ill. App. 3d 253, 258, 541 N.E.2d 245.

It is clear that the purpose of a section 12—183 proceeding is to determine whether all sums of money "really due" from the judgment debtor have in fact been paid and the judgment satisfied. (Ill. Rev. Stat. 1987, ch. 110, par. 12—183(a); see also *Russell v. Klein* (1974),

58 Ill. 2d 220, 224, 317 N.E.2d 556; *Nickerson v. Suplee* (1912), 174 Ill. App. 136, 140.) It was formerly the practice to seek an order of satisfaction of judgment under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1965, ch. 110, par. 72), now section 2—1401 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401), and section 72 was thought to provide the exclusive method for obtaining relief from final orders and judgments more than 30 days after their entry. (See C. Davis, *Scope of Section 72 of the Civil Practice Act*, 55 Ill. B.J. 820 (1967).) The Civil Practice Act appears to have abolished all prior existing common law writs (including the writ of *audita querela*) for relief after 30 days from the entry of judgment; there were two possible exceptions: relief from void judgments, and relief afforded by the inherent power of a court to make such orders as may be necessary to carry its judgment into effect and render it operative, a power which continues in the court until its judgment is satisfied. See C. Davis, *Scope of Section 72 of the Civil Practice Act*, 55 Ill. B.J., at 822 (1967); see also *Weaver v. Bolton* (1965), 61 Ill. App. 2d 98, 105-06, 209 N.E.2d 5.

In *Russell*, the supreme court determined that a judgment debtor may claim a discharge and satisfaction of judgment more than two years after the entry of judgment despite the two-year time limitation of section 72 and held that section 72 was not the exclusive remedy; furthermore, a section 72 remedy was available only for relief based on matters which antedated the rendition of judgment and not those matters which arose subsequent to its rendition. The *Russell* court reasoned that such a two-year time limitation would be illogical and incompatible with the seven-year time limitation provided for execution on a judgment. *Russell*, 58 Ill. 2d at 226, 317 N.E.2d at 559; see also Ill. Rev. Stat. 1987, ch. 110, par. 12—108.

■ Because it is pivotal to our decision, we address first plaintiff's argument that the trial court did not have jurisdiction to "modify" its order of judgment more than 30 days after it became final. We note that plaintiff cites no case law requiring defendants to seek affirmative relief from the judgment under the 30-day provisions of section 2—1301(a) of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1301(a)) or, following the 30-day period, under section 2—1401 (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401). However, the fact that defendants did not avail themselves of the usual post-trial motion for relief from a judgment is not fatal. Defendants were not challenging the final judgment itself. Rather, their petition was in the nature of an enforcement or supplementary proceeding invoking the continuing power of the court to control its own process. In *Sandburg v. Pa-*

*pineau* (1876), 81 Ill. 446, 448-49, the supreme court stated the applicable theory:

> "There is no principle of law better recognized than that which gives to courts of record power over the process of their courts. It is essential to the administration of justice, and it by no means depends upon statutory enactment, but the power is coeval with the common law courts; and such courts will recall their process and quash the same, when it is shown that it would be illegal or inequitable to permit its further use, and to allow it to be enforced. If a judgment were satisfied, and, through mistake or by design, an execution were to issue upon it, does any one suppose the court from which it issued is powerless to recall and quash it? Or if it was only partially satisfied, and an execution were to issue for the full amount of the judgment, would any one have the hardihood to say that the court could not order the credit to be indorsed on the execution? So the court has power, in all cases, to compel credits on judgments or executions, where it would be illegal or inequitable to proceed to collect the amount claimed. A court of justice will never permit a plaintiff, simply because he has acquired an unjust advantage by obtaining an execution, to retain and enforce it." 81 Ill. at 448-49.

See *Gatto v. Walgreen Drug Co.* (1974), 23 Ill. App. 3d 628, 641-42, 320 N.E.2d 222, *rev'd on other grounds* (1975), 61 Ill. 2d 513, 337 N.E.2d 23.

*Weaver v. Bolton* (1965), 61 Ill. App. 2d 98, 209 N.E.2d 5, is a more recent case involving a petition seeking credit for a payment antedating the judgment which could not have been properly brought under a section 72 petition because the petitioner had full knowledge of the settlement prior to the entry of judgment and thus the petitioner had failed the due diligence requirement of a section 72 petition. Nevertheless, in *Weaver*, this court determined that a trial court was not without jurisdiction to hear the petition, stating:

> "This does not mean, however, that the trial court was without jurisdiction to hear such petition. It had authority to make such orders and issue writs as were necessary to carry its judgments into effect and to render them operative. This power continued in the court until its judgments were satisfied, and the present proceeding pertained to the satisfaction of these judgments rather than their modification as that term is generally understood. Many such questions arise subsequent to judgment in which jurisdiction is to be exercised.

Such judicial power has long been recognized. In *Virginia v. West Virginia*, 246 U.S. 565 (1917), at page 591, the court stated: 'That judicial power essentially involves the right to enforce the results of its exertion is elementary.' " 61 Ill. App. 2d at 105, 209 N.E.2d at 9.

In other words, the amount of the execution to be issued upon a judgment, as in this case, is subject to the legal and equitable control of the court. (*Gatto*, 23 Ill. App. 3d at 643, 320 N.E.2d at 233; see also *Heller v. Lee* (1985), 130 Ill. App. 3d 701, 703, 474 N.E.2d 856.) As the *Weaver* court explained, where there is a single and indivisible injury caused by the negligence of defendants, the damages are inseparable, and any amounts received from any of the defendants must be deducted from the total damages sustained. (*Weaver*, 61 Ill. App. 2d at 107, 209 N.E.2d at 10; accord *YMCA v. Midland Architects, Inc.* (1988), 174 Ill. App. 3d 966, 970, 529 N.E.2d 288.) Similarly, we find that, in this case, the trial court had jurisdiction to entertain the motion to determine the amount to be paid to satisfy the judgment.

■ Having determined that the trial court had jurisdiction to determine the issue of whether the judgment was satisfied, we also conclude that it was proper for the trial court to give defendants a credit or setoff for sums previously paid to plaintiff before the entry of judgment. First, we point out that Illinois has a strong public policy against a plaintiff's double recovery for the same injury:

"The theory of recovery in a negligence action is focused upon compensation to the plaintiff for his injuries and not punishment to the defendant. (*Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 363, 392 N.E.2d 1, 5.) An injured person is entitled to one full compensation for his injuries, and a double recovery for the same injury is against public policy. (*Popovich v. Ram Pipe & Supply Co.* (1980), 82 Ill. 2d 203, 412 N.E.2d 518.) Thus, a plaintiff who has recovered for his damages should have no basis to complain because a defendant benefited from a setoff." (*Eberle v. Brenner* (1987), 153 Ill. App. 3d 700, 702, 505 N.E.2d 691, 693.)

(See also *Dick v. Gursoy* (1984), 124 Ill. App. 3d 185, 471 N.E.2d 195.) In this connection, in order to prevent a double recovery, our supreme court has adopted the view that " '[p]ayments made by one of the tortfeasors on account of the tort either before or after judgment, diminish the claim of an injured person against all others responsible for the same harm. This is true although it was agreed between the payor and the injured person that the payment was to have no effect upon the claims against the other.' (Restatement (Second) of Torts

sec. 885, comment *e* (1979).)" *Popovich v. Ram Pipe & Supply Co.* (1980), 82 Ill. 2d 203, 209, 412 N.E.2d 518, 521.

The thrust of plaintiff's arguments seems to be that defendants were required to assert their right to a setoff or a counterclaim either before the entry of judgment or within 30 days thereafter or defendants' claims would be waived. However, it is now established that a defendant is not required to immediately assert his rights against a plaintiff by way of setoff or counterclaim if it would be inconvenient or strategically inadvisable to do so under section 2—608(a) of the Code of Civil Procedure. (*Midland Architects*, 174 Ill. App. 3d at 971, 529 N.E.2d at 291-92; *Kennedy v. First National Bank* (1985), 129 Ill. App. 3d 633, 636, 473 N.E.2d 604; see also Ill. Rev. Stat. 1987, ch. 110, par. 2—608.) This court has previously determined that a supplemental post-trial motion for a setoff filed more than 30 days after the verdict was rendered was not fatally defective because the question of a setoff does not arise as the result of the trial and the issue may be raised thereafter. *J.F. Equipment, Inc. v. Owatonna Manufacturing Co.* (1986), 143 Ill. App. 3d 208, 221, 494 N.E.2d 516.

Based on the foregoing, we believe that the trial court had jurisdiction to hear defendants' motion for an order of satisfaction of judgment and, upon proper proof, could exercise its equitable powers to determine that defendants were entitled to a credit or setoff for payments made to plaintiff prior to the lawsuit for purposes of compensation for his injury. As we have pointed out, a petition under section 12—183(b) need not be made by way of either a post-trial motion within 30 days of judgment or by way of a section 2—1401 petition since a motion for an order of satisfaction is not, technically speaking, an attack on the final judgment itself but is rather in the nature of a supplemental enforcement proceeding; it is governed, if at all, by the time constraints applicable to such a proceeding.

The few cases we have examined on this subject from other jurisdictions support the view that a post-judgment motion for the satisfaction of judgment is the proper method to obtain a credit even for payments made prior to the rendition of judgment where defendants did not seek credits in the main cause of action. See, *e.g., Boles v. Steel* (1972), 288 Ala. 732, 264 So. 2d 194 (post-judgment motion to satisfy judgment was proper method to obtain credit for settlement payments advanced to defendant before trial); *Edwards v. Passarelli Brothers Automotive Service, Inc.* (1966), 8 Ohio St. 2d 6, 221 N.E.2d 708 (principle of *res judicata* did not prevent judgment debtor from obtaining credit for payments advanced pursuant to agreement before judgment rendered; credit toward satisfaction of judgment could be

obtained by post-trial motion upon proof of payment; judgment debtor had no right to credit until final judgment rendered); *Russell v. Ashe Brick Co.* (1976), 267 S.C. 640, 230 S.E.2d 814 (defendant entitled to offset or credit sought in post-trial motion for payment made to plaintiff prior to judgment in order to prevent recovery in excess of jury verdict); *Byrd v. Stuart* (1969), 224 Tenn. 46, 450 S.W.2d 11 (judgment debtor not attacking final judgment could properly seek partial satisfaction for advance payment in post-judgment motion brought in court of equity to prevent double recovery).

Commenting on the common thread found in the cases it had similarly examined, the *Russell* court explained that these cases "involved 'advance payments' which as the term suggests is the laudable practice of expediting payment to injured parties prior to and in anticipation of future settlement or judgment." (*Russell*, 267 S.C. at 643, 230 S.E.2d at 815.) The court also indicated that the apparent lack of prior litigation on the subject is perhaps explained by the obvious wrong in permitting a plaintiff to collect funds in excess of the jury's verdict. 267 S.C. at 643, 230 S.E.2d at 815. See generally 47 Am. Jur. 2d *Judgments* §§997 through 1000 (1969).

In reviewing the present case, we likewise find that plaintiff should not be permitted to obtain a windfall recovery stemming from his evasiveness in acknowledging receipt of the advance payments before judgment or in his refusal to accept the balance of the sums owed to him when they were tendered after judgment. We believe that our determination is consistent with the objective of the statute: the release of a judgment debtor from further obligation upon a proper showing that the judgment creditor has in fact been paid or satisfied for the injury which is the subject of that judgment. We conclude that the trial court properly credited defendants' payment in ordering the satisfaction of judgment and that its order was correctly entered.

The judgment of the circuit court is affirmed.

Affirmed.

REINHARD and INGLIS, JJ., concur.