# Illinois Official Reports

## Appellate Court

---

*Work Zone Safety, Inc. v. Crest Hill Land Development, L.L.C.*,
2015 IL App (1st) 140088

---

| | |
|---|---|
| Appellate Court Caption | WORK ZONE SAFETY, INC., Plaintiff-Appellant, v. CREST HILL LAND DEVELOPMENT, L.L.C., Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-14-0088 |
| Filed | March 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-38661; the Hon. Thomas R. Allen, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Goldstine, Skrodzki, Russian, Nemec & Hoff, Ltd., of Burr Ridge (William H. Hrabak, Jr., and Sara L. Spitler, of counsel), for appellant.<br><br>Fuoco Law Group, Ltd., of Highland Park (Steven C. Fuoco, of counsel), for appellee. |

Panel JUSTICE LIU delivered the judgment of the court, with opinion. Presiding Justice Simon and Justice Neville concurred in the judgment and opinion.

## OPINION

¶ 1 Plaintiff, Work Zone Safety, Inc. (Work Zone), appeals an order of the circuit court granting defendant, Crest Hill Land Development (CHLD), equitable relief on a judgment confirming an arbitration award. The arbitration involved a dispute that arose out of CHLD's sale of certain wetlands property to Work Zone. The arbitrator concluded that CHLD was obligated to repurchase the property at a specific price and awarded Work Zone damages in the amount of said price–noting that the award "stands" if CHLD failed to repurchase the property. The circuit court confirmed the award and entered a judgment against CHLD. Subsequently, CHLD did not repurchase the property or appeal the judgment. Instead, CHLD moved to dismiss the supplementary proceedings and asked for a "return of excess payment," arguing that it was inequitable for Work Zone to both retain the property and collect money damages. Work Zone challenged the motion as "an improper collateral attack" on the judgment. Following a hearing, the court ordered Work Zone to transfer the property to CHLD. This appeal followed.

¶ 2                                  BACKGROUND
¶ 3 Work Zone and CHLD entered into a "Wetlands Escrow Agreement" (agreement) in connection with CHLD's sale of a 10.75-acre tract of vacant land to Work Zone. Pursuant to the agreement, CHLD was required to complete certain mitigation work on 3.7 acres of wetlands on the tract within a year of the closing. The agreement provided that if CHLD failed to perform the work, Work Zone had a right to elect that CHLD repurchase the wetlands property (property) for the price of $224,029.08. The agreement also provided that certain monies designated as the "Wetlands Escrow Funds" would be used for the mitigation work. After CHLD failed to perform the work, Work Zone demanded that CHLD repurchase the property. CHLD refused to buy back the property, and Work Zone initiated arbitration proceedings.

¶ 4 In August 2010, the arbitrator ruled that Work Zone had properly exercised its contractual right to demand CHLD's repurchase of the property and that CHLD had failed to satisfy its repurchase obligation under the agreement. Work Zone was awarded $224,029.08 in damages, along with $25,000 in legal fees and $9,350 in administrative fees and expenses. The arbitration award provided, specifically: "If [CHLD] fails or refuses to accomplish its role as purchaser of the Returned Property, the Award of $224,029.08 in favor of [Work Zone] stands."

¶ 5 In September 2010, after CHLD failed to repurchase the property, Work Zone filed a complaint in the circuit court to confirm the arbitration award. CHLD filed an answer and a counterclaim to vacate the award. On March 11, 2011, the court confirmed the arbitration award and entered judgment for Work Zone in the amount of $249,029.08, based on $224,029.08 in damages and $25,000 in legal fees. The court later entered, on April 14, 2011,

a corrected order for a judgment amount of $258,379.08, which included $9,350 in administrative fees and expenses related to the arbitration. In an effort to collect the judgment amount, Work Zone issued citations to discover assets to CHLD and other third parties. Despite CHLD's failure to respond to the citations, Work Zone recovered approximately $105,000 of the judgment amount through supplementary proceedings.

¶ 6     In May 2011, in response to an emergency motion filed by CHLD,[1] the circuit court granted CHLD another opportunity to repurchase the property. The court ordered CHLD to "close on the sale of the property" in accordance with the agreement and the arbitration award "on or before June 6, 2011 for a price of $268,379 minus offsets for any amounts collected by Work Zone in supplemental proceedings."[2] The court further stated: "In the event that the transaction does not occur on 6-6-11, for reasons within the control of [CHLD], the 3-11-11 & 4-14-11 orders shall stand." CHLD failed to purchase the property by the June 6 deadline, and Work Zone continued to seek enforcement of the judgment.

¶ 7     Twenty-two months later, on March 5, 2013, CHLD filed a motion to dismiss the citations to discover assets and requested an "Order of Satisfaction with Release of Lien and Return of Excess Payment" (motion to dismiss).[3] CHLD argued that Work Zone's retention of the wetlands property *and* recovery of money damages constituted a windfall and, therefore, was inequitable. Relying on theories of unjust enrichment or, alternatively, equitable set off, CHLD asked the circuit court to order the disgorgement of the alleged excess recovery that Work Zone had obtained in supplementary proceedings. Three days later, on March 8, CHLD filed a motion for a preliminary injunction, seeking to enjoin Work Zone from taking any further action to collect the judgment until the circuit court ruled on CHLD's motion to dismiss. For the first time, in its motion for a preliminary injunction, CHLD identified section 12-183(b) of the Code of Civil Procedure (Code) (735 ILCS 5/12-183(b) (West 2012)) as the basis for its request for an order of satisfaction and release of lien.

¶ 8     The circuit court ultimately ruled in favor of CHLD and determined that equitable relief was warranted. In reaching this decision, the court explained that although Work Zone was "entitled to its judgment of $258,579.08 with running post judgment interest accruing," it could not also retain title to the property. The matter was then continued to allow the parties to discuss a possible remedy. On October 2, 2013, the court entered a written order awarding CHLD title to the wetlands property and stating as follows:

> "By and large, this Court has already expressed that equitable relief for [CHLD] is warranted. (Order, May 30, 2013). For Work Zone to enforce the remaining balance of the judgment against [CHLD] while maintaining title of the 3.6 acre wetlands goes beyond what the Court finds to be fair and equitable. *** Work Zone is entitled to

---

[1]While CHLD's emergency motion is not contained in the record before us, there is no need to supplement the record because neither party has raised an issue on appeal related to the motion itself.

[2]The record is silent as to why a discrepancy exists between the $268,379 price in the May 13 order and the $258,379.08 judgment in the April 14 order; however, it has no bearing on our disposition of the case.

[3]We note that CHLD's motion to dismiss was filed in the same chancery action in which the arbitration award was confirmed, but a different judge presided over the proceedings related to the motion to dismiss.

such remaining balance of the judgment reflected in that accounting, plus any interest accrued from the date of that accounting until the date of this Order. Accordingly, [CHLD] is entitled to the title of the Returned Property as valued per the Wetlands Escrow Agreement in the amount of $224,029.08. As such, no current valuation of the Returned Property will be determined."

¶ 9 Work Zone subsequently filed a petition for the legal fees and costs incurred in the circuit court proceedings subsequent to the entry of the arbitration award, contending that it was entitled to fees and costs under the fee-shifting provision set forth in section 9(g) of the agreement. Additionally, Work Zone argued, "it would be grossly inequitable to allow [CHLD] to sit idly by for years while [Work Zone] incurred substantial attorney's fees and expenses only to show up at the eleventh hour offering to satisfy the Judgment but not the fees." The court denied the fee petition, holding that the fee-shifting provision in the agreement did not apply to this case because the "dispute [was] not about the Wetlands Escrow Funds."

¶ 10 On appeal, we must determine if the circuit court erred in (1) ordering Work Zone to transfer title of the property to CHLD and (2) denying Work Zone's request for legal fees and costs related to the collection proceedings. We reverse in part and affirm in part.

¶ 11                                                    ANALYSIS

¶ 12 As an initial matter, the parties disagree over the proper standard for reviewing the circuit court's order for equitable relief. Work Zone maintains that a *de novo* standard of review applies because the circuit court effectively either (1) awarded CHLD relief from judgment under section 2-1401 of the Code, or (2) vacated or otherwise modified the arbitration award and the judgment confirming the award. CHLD argues that the circuit court did not enter judgment pursuant to section 2-1401 or modify the award and, therefore, a deferential standard of review is applicable to the circuit court's "factual findings" in this case. We conclude that the proper standard of review is *de novo* because the issues on appeal do not involve the circuit court's factual findings but, rather, questions of law. We must first determine whether the circuit court properly construed the arbitration award and the judgment order confirming the award. Thereafter, we must decide whether the court's order granting equitable relief to CHLD effectively modified or vacated the arbitration award and the judgment order confirming the award. See *In re Marriage of Rice*, 2011 IL App (1st) 103753, ¶ 25 ("We note that we owe no deference to the trial court's interpretation of the *** order, as it involves no factual findings but is a purely legal question, much like the interpretation of a statute or contract.").

¶ 13 Turning to the merits, Work Zone first contends that the circuit court erred in awarding equitable relief to CHLD because CHLD's motion to dismiss constituted an improper collateral attack on the 2011 judgment orders and sought to modify or vacate the arbitration award. "Once a court with proper jurisdiction has entered a final judgment, that judgment can only be attacked on direct appeal, or in one of the traditional collateral proceedings now defined by statute"–namely, *habeas corpus*, relief from judgment under section 2-1401, or a postconviction hearing. *Malone v. Cosentino*, 99 Ill. 2d 29, 32-33 (1983). CHLD took none of these actions after the circuit court entered its judgment in 2011. It is undisputed that CHLD never appealed the arbitration award, the order confirming the award, or the judgment orders entered by the court in April and May of 2011. Furthermore, CHLD's request for equitable

- 4 -

relief occurred well outside of the 30-day period for filing postjudgment motions. See 735 ILCS 5/2-1301(e) (West 2012); Ill. S. Ct. R. 303 (eff. May 30, 2008). While a party can seek to vacate or modify a final judgment older than 30 days under certain circumstances pursuant to section 2-1401, CHLD notably concedes that section 2-1401 does not apply here. Instead, it relies solely on section 12-183 (735 ILCS 5/12-183(b) (West 2012)) as support for the circuit court's award of equitable relief–a theory it first advanced in its motion for injunctive relief.

¶ 14    In response, CHLD maintains that a motion "seeking an equitable setoff in supplementary proceedings does not seek to modify a judgment but rather to satisfy a judgment and therefore is not subject to posttrial motion filing time limits." According to CHLD, the circuit court's order did not modify the judgment but instead "correct[ed] the windfall" created by Work Zone's "inequitable refusal to perform its unilateral 'sell back' conveyance," as required by the agreement. CHLD limits its argument, on appeal, to the applicability of section 12-183(b).

¶ 15    "The purpose of section 12-183 is to serve as proof of the payment of the judgment, barring any further attempts by the judgment creditor to enforce the judgment, and to stop the accrual of postjudgment interest." *Bricks, Inc. v. C&F Developers, Inc.*, 361 Ill. App. 3d 157, 161 (2005). In other words, a section 12-183 proceeding "determine[s] whether all sums of money 'really due' from the judgment debtor have in fact been paid and the judgment satisfied." *Klier v. Siegel*, 200 Ill. App. 3d 121, 124 (1990). Section 12-183(b) specifically prescribes the procedure by which a judgment debtor may petition the court for such relief:

> "If the judgment creditor, his or her assigns of record or other legal representative to whom tender has been made of all sums of money due him or her from the judgment debtor including interest, on any judgment entered by a court, wilfully fails or refuses, at the request of the judgment debtor or his or her legal representative to execute and deliver to the judgment debtor or his or her legal representative an instrument in writing releasing such judgment, the judgment debtor may petition the court in which such judgment is of record, making tender therewith to the court of all sums due in principal and interest on such judgment, for the use of the judgment creditor, his or her executors, administrators or assigns, whereupon the court shall enter an order satisfying the judgment and releasing all liens based on such judgment." 735 ILCS 5/12-183(b) (West 2012).

See *In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 110 (1990) ("The effect of this section of the statute is to compel the entry of satisfaction of judgment.").

¶ 16    According to CHLD, section 12-183 applies in this case because the circuit court did not *modify* the award or orders confirming the award but, instead, made a determination concerning whether the money "really due" from CHLD to Work Zone was paid and whether the judgment amount was satisfied. We disagree. By requiring Work Zone to transfer the deed and title of the property to CHLD without additional compensation or consideration for that conveyance, the circuit court effectively modified the arbitration award and the judgment order confirming the award. The plain and unambiguous language of the circuit court's orders supports this conclusion. The March 11, 2011 order imposed a judgment for a monetary amount based on the arbitration award and made no reference whatsoever to any disposition of the property. The April 14, 2011 order simply corrected the March judgment amount and, again, imposed no obligation for a transfer of the property. Implicit in both

orders is the right of Work Zone to retain the property, as neither required Work Zone to return the property to CHLD upon collection of the judgment in full or, alternatively, to credit the value of the property as a setoff to the judgment. Finally, the May 13, 2011 order provided specifically that if the sale did not occur by June 6 "for reasons within the control of Crest Hill," then the orders dated March 11, 2011 and April 14, 2011 "shall stand." We construe this language to mean that the status quo of the parties under the March and April orders–including Work Zone's entitlement to the property–would be resumed if the closing did not occur by the deadline. We conclude, therefore, that by imposing a new obligation on Work Zone, *i.e.*, to deed the title of the property to CHLD, the circuit court effectively modified the judgment and underlying arbitration award by dispossessing Work Zone from the property it was entitled to keep as a consequence of CHLD's decision to disregard its obligations under the agreement and May 2011 order. Because the circuit court's equitable relief actually modified a final judgment–as opposed to merely releasing a judgment that had been satisfied–we conclude that section 12-183 does not apply in this case and cannot be asserted as a basis for relieving CHDL from its obligation to satisfy the judgment.[4]

¶ 17        CHLD nevertheless suggests that equitable relief was appropriate because, according to CHLD, Work Zone had an obligation under the agreement to sell the property back to CHLD. This argument is not persuasive, given the fact that prior to raising the purported "inequity" at issue, CHLD elected to avoid its obligation to repurchase the property in accordance with the agreement on *three* separate occasions. Even after the arbitrator and the circuit court provided for the option to repurchase the property at the previously agreed upon price set forth in the agreement, CHLD refused to comply. Moreover, it failed to appeal any part of the award or order of which it now complains.

¶ 18        As a general principle, the entry of an order that modifies a final judgment based solely on equitable and fairness considerations, in the absence of a showing that all requirements of section 2-1401 are satisfied, subverts the statutory purpose of section 2-1401. As our supreme court recognized in *People v. Vincent*, 226 Ill. 2d 1 (2007), "[w]hen the legislature abolished the [common law] writs in favor of [the] statutory remedy[, *i.e.*, section 2-1401]," for vacating a final judgment, "it became inaccurate to continue to view the relief in strictly equitable terms." *Id.* at 16. Rather, to warrant relief from a final judgment under section 2-1401, a petitioner must establish: " '(1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief.' " *West Bend Mutual Insurance Co. v. 3RC Mechanical & Contracting Services, LLC*, 2014 IL App (1st) 123213, ¶ 11 (quoting *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986)). Here, CHLD has not attempted to make the requisite showing under section 2-1401, and awarding relief from a final judgment based on the equities alone circumvents section 2-1401's requirements and undermines the finality of judgments.

---

[4]This conclusion is further bolstered by CHLD's counsel's concession, during oral arguments, that he did not know whether CHLD ever made a demand on Work Zone "to execute and deliver" to CHLD "an instrument in writing releasing [the] judgment" as required by section 12-183. CHLD's counsel explained that, in the 2011 circuit court proceedings, CHLD had requested that Work Zone deed the property to CHLD, but he was unable to confirm that CHLD had satisfied section 12-183.

¶ 19     CHLD relies on four cases which it maintains support the circuit court's equitable relief in this case: *Star Charters v. Figueroa*, 192 Ill. 2d 47 (2000); *International Supply Co. v. Campbell*, 391 Ill. App. 3d 439 (2009); *Klier v. Siegel*, 200 Ill. App. 3d 121 (1990); and *Heller v. Lee*, 130 Ill. App. 3d 701 (1985).[5] These cases are distinguishable.

¶ 20     *Star Charters* and *Klier* stand for the proposition that supplementary proceedings to setoff or satisfy a judgment need not be filed within the 30-day period for filing postjudgment motions because such proceedings do not modify or attack the judgment. Because, as discussed above, the circuit court's order actually did modify the judgment, these cases are inapplicable. *Star Charters* involved the defendant's posttrial request for a setoff based on amounts already paid to the plaintiff in court-approved settlements. It holds that such a request need not be made within the 30-day period for filing posttrial motions because "a defendant's request for setoff to reflect amounts paid by settling defendants seeks not to *modify*, but rather to *satisfy*, the judgment entered by the trial court." (Emphases in original.) *Star Charters*, 192 Ill. 2d at 48. *Klier* reached a similar conclusion with respect to a petition brought under section 12-183. In *Klier*, a personal injury action, the defendants had advanced the plaintiff certain payments for medical expenses and lost wages before the plaintiff filed the lawsuit. The jury ultimately returned a verdict of $11,000 for the plaintiff, and judgment was entered. More than 30-days after final judgment, the defendants petitioned under section 12-183 for a satisfaction of the judgment upon the defendants' payment of the outstanding balance on the judgment (*i.e.*, $11,000 minus the amount paid before litigation commenced), which the circuit court granted. On appeal, the appellate court affirmed over the plaintiff's objection that the circuit court lacked jurisdiction to modify the judgment. The court explained that by seeking a setoff, the "[d]efendants were not challenging the final judgment itself," but rather were seeking "an enforcement or supplementary proceeding invoking the continuing power of the court to control its own process." *Klier*, 200 Ill. App. 3d at 125. In other words, a section 12-183(b) petition "is not, technically speaking, an attack on the final judgment itself but is rather in the nature of a supplemental enforcement proceeding." *Id.* at 128.

¶ 21     CHLD next relies on *International Supply* and *Heller* to argue that the circuit court properly granted defendant equitable relief because it was inequitable for Work Zone to retain title to the property while also collecting the money judgment. But CHLD's reliance on this authority is misplaced. While both cases address windfalls to the plaintiffs based on their receipt of title to a property, neither case involves the modification of a final judgment in the absence of a showing that the requirements under section 2-1401 were satisfied.

¶ 22     In *International Supply*, the plaintiffs assisted the defendants in securing loans for a land development, in exchange for a personal guaranty from the defendants and escrow of two property deeds. *International Supply*, 391 Ill. App. 3d at 441-42. Following the defendants' default on the loans, the plaintiffs took title to the properties and sued to enforce the guaranty. On appeal, the court explained that by taking "full ownership and control of the

     [5]CHLD also argues that Work Zone "waived all challenge to the equitable relief granted defendant below" by failing to address these cases in its opening brief. We reject this waiver argument. Work Zone expressly argued in its opening brief that section 12-183 did not apply because CHLD was requesting relief from a judgment as opposed to a satisfaction of a judgment. And it additionally cited to case law addressing the purpose of section 12-183.

two properties" held as collateral, the plaintiffs had "accepted the transfer of the two properties as substitute performance in full satisfaction of defendants' obligation under the personal guaranty" and was therefore not entitled to any further damages. *Id.* at 451.

¶ 23 Unlike the present case, *International Supply* addressed the issue of whether plaintiffs were still entitled to recover their "damages" for breach of contract after they took and developed the properties held in escrow as collateral for the defendants' loans. In contrast, the case at bar does not involve any consideration of the wetlands property as "collateral" for damages in the event of a breach of the agreement. The arbitration award and the 2011 judgment orders all indicate, unequivocally, that Work Zone is entitled to collect a judgment of $258,379.08 regardless of CHLD's actions *vis-à-vis* the property. Whether CHLD repurchased the property or not by the June 6, 2011 deadline did not impact the amount of the monetary damages that Work Zone was entitled to recover. The court's imposition of the June 6 deadline further supports the notion that CHLD's right to repurchase the property was not interminable and in fact expired after June 6, 2011. Furthermore, the award and the judgment orders provided that if CHLD failed to repurchase the property, the monetary award would "stand"–meaning that Work Zone would be entitled to collect the money *in spite* of the fact that it was still holding title to the property. Therefore, unlike the two escrowed properties in *International Supply*, the wetlands property in this case is not being held by Work Zone as "collateral" for its money damages.

¶ 24 In *Heller*, after a money judgment was entered in favor of the plaintiffs, the defendants posted an appeal bond consisting of a deed to real property and a certificate of deposit. *Heller*, 130 Ill. App. 3d at 702. Following release of the bond, the plaintiffs received the certificate of deposit and took title to the property but only applied the value of the certificate of deposit against the judgment amount. The plaintiffs then filed collection proceedings against the defendant to recover the deficiency. The defendants filed a section 12-183 petition for a release from judgment and return of excess bond. The trial court dismissed the petition. The appellate court affirmed the dismissal of the petition because defendants had "faile[d] to allege facts sufficient to show satisfaction of the judgment in cash or an agreement to transfer property in lieu of cash." *Id.* at 703. The court found, however, that the defendants were "entitled to equitable relief" because the plaintiffs had "received a windfall" by retaining the property, and remanded the case with directions to the trial court "to sell the property, apply the proceeds to the judgment, and remit the excess, if any, to the defendants." *Id.*

¶ 25 Here, in contrast, the property was not posted by CHLD as a bond to satisfy the judgment. Rather, Work Zone has held title to the property since before the arbitration proceedings commenced. Therefore, unlike the situation in *Heller*, Work Zone did not hold title to the property as collateral for the money judgment, nor did it accept the title as payment of the money judgment.

¶ 26 By filing its motion to dismiss that sought to modify the final judgment and underlying arbitration award, after failing to appeal either the judgment or award and failing to respond to any of the supplementary proceedings and citations initiated by Work Zone, CHLD essentially brought a collateral attack on the final judgment without satisfying any of the requirements under section 2-1301 or 2-1401. We find that section 12-183 had no applicability in this case because the relief that CHLD sought under this section required a modification of the judgment, which allowed Work Zone to both collect the money damages

and to retain the property. Therefore, we reverse the court's order requiring Work Zone to transfer the title and deed to the property to CHLD.

¶ 27 Work Zone also contends that the circuit court effectively vacated the arbitration award and the 2011 judgment orders when it awarded CHLD the title to the property. Because we have already found that the court's order granting CHLD equitable relief resulted in impermissible modification of the judgment and underlying arbitration award, we need not decide at this time whether the order resulted in a vacatur of the arbitration award and judgment orders.

¶ 28 The second issue on appeal is whether the circuit court erred in not awarding Work Zone its attorney fees and costs incurred in connection with the circuit court proceedings. Section 9(g) of the agreement specifically provides that attorney fees may be awarded to the prevailing party if the dispute involves "the disposition of the Wetlands Escrow Funds hereunder." Our review of the circuit court's denial of the fee petition is *de novo* in this case, because the circuit court's determination was based on its interpretation of the agreement. See *Wendy & William Spatz Charitable Foundation v. 2263 North Lincoln Corp.*, 2013 IL App (1st) 122076, ¶ 40 (reviewing "*de novo* the trial court's interpretation of [contract provisions governing attorney fees]"). For the reasons that follow, we affirm the court's judgment denying attorney fees.

¶ 29 Work Zone contends that, because the arbitrator awarded attorney fees and costs in the underlying arbitration proceeding, the circuit court was bound by the arbitrator's interpretation of the applicability of section 9(g) to the dispute and that it "effectively overruled the Arbitrator" by denying the fee petition. Next, Work Zone maintains that the court misinterpreted the agreement by holding that the fee-shifting provision did not apply to the fees and costs incurred in the circuit court proceedings. Last, Work Zone argues that notwithstanding the language of the agreement, the circuit court's denial of fees in this case is inequitable.

¶ 30 Section 9(g) of the agreement provides for an award of fees as follows:

"If either Purchaser [Work Zone] or Seller [CHLD] obtains a judgment or arbitration award against the other by reason of a dispute regarding the disposition of the Wetlands Escrow Funds hereunder, the prevailing party is entitled to collect reasonable attorneys' fees and costs incurred by such prevailing party in any such judgment or award and the prevailing party is entitled to all interest earned on the Wetlands Escrow Funds, if any."

¶ 31 As to Work Zone's first argument, CHLD persuasively argues that Work Zone has forfeited any argument that the arbitrator's award of fees and costs necessarily bound the circuit court to award fees and costs in the postjudgment proceedings because Work Zone never presented this argument to the trial court. As a result, CHLD maintains, it was forfeited. See *U.S. Bank National Ass'n v. Prabhakaran*, 2013 IL App (1st) 111224, ¶ 24 ("Arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal."). Work Zone notably failed to offer a response in its reply brief to CHLD's forfeiture argument. Accordingly, we conclude that it forfeited this argument on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); see also *Department of Central Management Services/The Department of State Police v. Illinois Labor Relations Board, State Panel*, 2012 IL App (4th) 110356, ¶ 26 (holding party forfeited an argument

when it failed to a file a reply brief and did not respond to the opposing party's forfeiture argument).

¶ 32 Turning to Work Zone's second argument, we hold that Work Zone failed to establish that the circuit court erred in interpreting the agreement's fee-shifting provision. Work Zone boldly contends that "[t]he plain language of the foregoing fee-shifting provision contains no limitations or restrictions on the fees and costs that can be awarded by the prevailing party, except that such fees must be reasonable." Notably, Work Zone omits and avoids any reference to the language in section 9(g) that limits applicability of the fee-shifting provision to a disagreement over "the *disposition of the Wetlands Escrow Funds* hereunder." (Emphasis added.) The circuit court concluded that the fee-shifting provision did not apply to Work Zone's request for fees and costs because the "dispute [was] not about the Wetlands Escrow Funds." We find no explanation by Work Zone in the record concerning how the current dispute involves the "Wetlands Escrow Funds." Under the circumstances, we conclude that Work Zone has failed to establish that the circuit court erred in its interpretation of the agreement.

¶ 33 Finally, Work Zone maintains that the denial of its request for fees was inequitable. In response, CHLD argues that the award of attorney fees is a matter of law, based either on contract or statute, not equity, and accordingly equity should not be a basis for a fee award. We agree with the latter proposition. As our supreme court has explained, "Illinois follows the 'American Rule,' which prohibits prevailing parties from recovering their attorney fees from the losing party, *absent express statutory or contractual provisions.*" (Emphasis added.) *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 64. Again, Work Zone neglects to address this general rule and offers no response to CHLD's position that an award of fees is improper in the absence of statutory or contractual authority. We follow the American Rule in this case and reject Work Zone's argument that the circuit court could award fees based on equity alone.

¶ 34                                                        CONCLUSION

¶ 35 For the foregoing reasons, we reverse the circuit court's judgment ordering Work Zone to transfer title of the property to CHLD, and we affirm the circuit court's judgment denying Work Zone's request for attorney fees and costs related to the circuit court proceedings.

¶ 36 Affirmed in part and reversed in part.