In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1330

THOMAS M. JANUSZ, JR.,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 CV 4402 — **Joan B. Gottschall**, *Judge.*

ARGUED FEBRUARY 11, 2016 — DECIDED AUGUST 10, 2016

Before RIPPLE, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Thomas Janusz sued the City of
Chicago and several of its police officers, alleging that the
officers had acted unlawfully in arresting him. The district
court granted summary judgment in favor of the City and
the officers. In doing so, it applied the single-recovery rule
and found that in a separate but related state court action,
Janusz had already obtained the damages to which he was

entitled. We conclude that the district court correctly found that the single-recovery rule barred Janusz from recovering damages in his federal lawsuit, since both lawsuits involve a single, indivisible set of injuries for which Janusz has already received compensation. We also agree with the district court that Janusz is judicially estopped from arguing that the judgment in the state action was not fully satisfied—a position at odds with several statements he made to the state court. So we affirm the district court's judgment.

## I.  BACKGROUND

### A.  Janusz's Arrest and Termination

In December 2001, three Chicago police officers—Defendants Alan Lucas, Parris George, and Gina Liberti—approached Plaintiff Thomas Janusz at a Chicago-area gas station. The officers claimed that they went to the area after receiving an anonymous tip about a drug transaction, and that they approached Janusz after noticing that his license plate was expired and that he was pacing around the gas station parking lot with a duffle bag. The officers further claimed that as they advanced, Janusz's companion, Paula Siragusa, informed them that Janusz had been smoking crack cocaine and that a plastic cup containing cocaine was in Janusz's car. The officers proceeded to search Janusz's duffle bag, discovered that it contained several thousand dollars in cash, and arrested Janusz. The police also discovered a white substance in a plastic cup in Janusz's car. However, the substance was later determined not to be cocaine.

At the police station, the three arresting officers were joined by a fourth officer—Defendant Amy Mugavero Lucas—and obtained Janusz's consent to search his apartment,

which was located above one of the funeral homes he manages for Keystone Illinois, Inc. (Janusz claims that this consent was acquired through coercion.) At the apartment, the officers allegedly found approximately $18,000 in cash and several illicit drugs—crystal methamphetamine, cocaine, and illegal anabolic steroids.

Approximately five months later, Janusz filed a motion to quash his arrest. A judge granted the motion, finding that the officers' stated reasons for approaching and ultimately arresting Janusz at the gas station were implausible. (The district court has explained in some detail why the state judge likely concluded this. *See generally Janusz v. City of Chi.*, 797 F. Supp. 2d 884, 886–89 (N.D. Ill. 2011). Regardless, that finding is not relevant for this appeal.) The charges against Janusz were dropped immediately thereafter. By that time, however, the arrest had set other negative events in motion.

Keystone suspended Janusz following his arrest and installed Brian Durante as his replacement. Durante and another coworker, Thomas Kotrba, later told several individuals within and outside of Keystone that Janusz had been selling crystal meth, operating a meth lab in his apartment, and stealing from clients. Unsurprisingly, Janusz was fired.

### B. Lawsuits Against Keystone and the City

Janusz filed two separate suits in connection with his arrest and termination. He sued Keystone, Durante, and Kotrba ("*Keystone* defendants") in Illinois state court, alleging breach of employment contract, defamation, and intentional infliction of emotional distress. He also sued the City of Chicago and Officers Lucas, George, Liberti, and Mugavero Lu-

cas ("*City* defendants") in federal court, alleging violations of his Fourth Amendment rights and various state laws.

The *Keystone* case proceeded to trial, and a jury found in Janusz's favor and awarded approximately $3,177,500. But both sides were disappointed with the result and appealed. In order to stay collection of the judgment, Keystone also filed an appeal bond for approximately $4.8 million. While the appeals were pending, the parties executed a settlement agreement requiring Janusz to execute a release in exchange for $3 million ($177,500 less than the jury award). Critically, however, the parties stipulated to the trial judge that "Keystone ha[d] paid [Janusz] all monies due and owing him as the result of the Judgment previously entered against Keystone." The trial judge vacated the judgment and dismissed the appeal pursuant to 735 Ill. Comp. Stat. 5/12-183(h) and Illinois Supreme Court Rule 309.

Meanwhile, the *City* case remained at the summary judgment stage. The original district judge denied in part the *City* defendants' summary judgment motion, and in doing so declined to determine the effect of the *Keystone* settlement on Janusz's damages claim. After a new judge was assigned, the *City* defendants renewed their summary judgment motion as to damages, arguing that Illinois's single-recovery rule prevented Janusz from recovering any damages relating to the lost wages and the emotional injuries for which the *Keystone* settlement had compensated him. The defendants also argued that the doctrine of judicial estoppel barred Janusz from claiming that the *Keystone* judgment had not been fully satisfied when the state court vacated it. The district court granted the City defendants' motion; however, the accompanying court order did not constitute a final appealable

judgment, since the *Keystone* settlement did not encompass all of the damages Janusz sought from the *City* defendants. This prompted the parties to stipulate that Janusz would "permanently waive[] and relinquish[] his right to seek to recover all damages that were not barred" by the summary judgment opinion. The district judge entered a judgment to that effect, and this appeal followed.

## II. ANALYSIS

We review the district court's grant of summary judgment de novo and construe all reasonable inferences in favor of Janusz as the non-moving party. *Goodman v. Nat'l Sec. Agency, Ins.*, 621 F.3d 651, 653–54 (7th Cir. 2010). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Draper v. Martin*, 664 F.3d 1110, 1112–13 (7th Cir. 2011).

On appeal, Janusz argues that the district court erred in granting summary judgment in the *City* defendants' favor on his damages claim. Specifically, he contends that the single-recovery rule does not prevent him from obtaining damages here because the judgment in *Keystone* was vacated, and that he should not be judicially estopped from claiming that the parties in *Keystone* settled for an amount less than the judgment. We disagree.

### A. Single-Recovery Rule Bars Damages

Janusz has brought claims under both federal and Illinois law, and in both jurisdictions, "[a] tort victim can obtain only one recovery for his harm, no matter how many tortfea-

sors inflicted it."[1] *Reliance Nat'l Ins. Co. v. Great Lake Aviation, Ltd.*, 430 F.3d 412, 416 (7th Cir. 2005) (quoting *Bosco v. Serhant*, 836 F.2d 271, 280 (7th Cir. 1987)); *see also Thornton v. Garcini*, 928 N.E.2d 804, 811 (Ill. 2010) ("A plaintiff may … receive only one full compensation for his or her injuries, and double recovery for the same injury is not allowed."). "That is so 'regardless of whether or not the plaintiff has recovered all that he or she might have recovered' in the initial proceeding." *Saichek v. Lupa*, 787 N.E.2d 827, 835 (Ill. 2003) (quoting *Dillon v. Evanston Hosp.*, 771 N.E.2d 357 (Ill. 2002)). The rule applies if "the amount of the loss has been judicially determined and a valid and final judgment has been entered." *Id.* at 833 (citing Restatement (Second) of Judgments § 50, cmt. d (1982) ("[W]hen a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforcible [sic] claim against any other obligor who is responsible for the same loss.")).

We find that the *Keystone* litigation involved a "valid and final judgment" for purposes of the single-recovery rule. The court in *Keystone* vacated the judgment and dismissed the case pursuant to § 12-183(h) of the Illinois Code of Civil Procedure, which states, "Upon the filing of a release or satisfaction in full satisfaction of judgment, signed by the party in whose favor the judgment was entered or his or her attorney, the court shall vacate the judgment, and dismiss the ac-

---

[1] We assume, as the parties do, that both federal common law and Illinois law govern Janusz's recovery of damages, since he has filed claims under both federal and state law. *See, e.g.*, *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) ("Federal common law governs the recovery of damages for complaints filed under 42 U.S.C. § 1983.").

tion." 735 Ill. Comp. Stat. 5/12-183(h). Generally, a vacated judgment in one case has no effect on future cases under Illinois law, and Illinois law "is determinative on the question because the judgment in question was rendered by an Illinois state court." *Pontarelli Limousine, Inc. v. City of Chi.*, 929 F.2d 339, 340 (7th Cir. 1991); *see also Matchett v. Rose*, 344 N.E.2d 770, 779 (Ill. 1976). However, in *Saichek v. Lupa*, 787 N.E.2d 827 (Ill. 2003), the Illinois Supreme Court carved out a narrow exception for the preclusive effect of vacaturs and dismissals made under § 12-183(h).

The plaintiff in *Saichek* was a passenger in a taxicab that was involved in a traffic collision. The plaintiff suffered injuries as a result and sued both the cab driver and the driver of the car that collided with the cab. After the cab driver failed to respond to the complaint, the plaintiff obtained a default judgment against him and initiated nonwage garnishment proceedings against his insurer. The parties ultimately executed a "Satisfaction Release of Judgment" that stipulated the insurer had paid the plaintiff the full amount of the judgment, and the trial court vacated the judgment and dismissed the action pursuant to § 12-183(h).

The driver of the other car then filed a motion to dismiss, arguing that the plaintiff had obtained all that she was entitled to receive for the single, indivisible set of injuries that she had suffered. The Illinois Supreme Court agreed with the driver, explaining that because the judgment had been fully satisfied, the plaintiff was precluded from relitigating the damages issue. 787 N.E.2d at 833. Several other Illinois cases comport with *Saichek*, insofar as they describe the purpose of § 12-183(h) as "serv[ing] as proof of the payment of the judgment, barring any further attempts by the judgment

creditor to enforce the judgment." *Bricks, Inc. v. C & F Developers, Inc.*, 836 N.E.2d 743, 747 (Ill. App. Ct. 2005); *Klier v. Siegel*, 558 N.E.2d 583, 586 (Ill. App. Ct. 1990) ("It is clear that the purpose of a section 12-183 proceeding is to determine whether all sums of money 'really due' from the judgment debtor have in fact been paid and the judgment satisfied.").

Janusz attempts to distinguish *Saichek* on the ground that the plaintiff "was precluded from relitigating the amount of her damages because the judgment was final and valid, not because it was satisfied." Not so. The *Saichek* Court expressly referenced satisfaction in its analysis. 787 N.E.2d at 833 ("Because *the judgment has now been satisfied*, and because plaintiff is precluded from relitigating the question of her damages, she has already received all that she is entitled to receive for the injuries that gave rise to this litigation." (emphasis added)). Janusz also argues that *Saichek* is distinguishable because it did not involve an appeal that was pending when the parties sought to vacate the judgment and dismiss the case under § 12-183(h). *Cf. Ballweg v. City of Springfield*, 499 N.E.2d 1373, 1375 (Ill. 1986) ("For purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted."). But we see nothing in *Saichek* that indicates this modest factual variance is relevant. Indeed, although the parties in *Keystone* initially pursued separate appeals, they ultimately *abandoned* those appeals, stipulated that the judgment had been fully satisfied, and petitioned the trial court for vacatur and dismissal.

Janusz looks to *Pontarelli Limousine v. City of Chicago*, where we held that a vacated judgment in a state court action had no collateral estoppel effect under Illinois law on a

similar federal dispute. 929 F.2d at 340–41. *Pontarelli* bears some similarity to the current dispute: after judgment on the jury's award was entered and while the defendant's appeal was pending, the parties entered into a settlement agreement to voluntarily dismiss the action. But *Pontarelli* did not involve § 12-183(h), and there is no indication that the parties stipulated or otherwise communicated to the court that the payments made to the plaintiffs had fully satisfied the judgment. So Janusz's reliance on *Pontarelli* is misplaced.

Finally, Janusz argues against applying *Saichek* because doing so will deter parties from settling cases in the future. We understand Janusz to be implying that if a plaintiff discovers that settling pursuant to § 12-183(h) might preclude her from pursuing other alleged wrongdoers, she would forgo settlement and see the dispute to the end—at potentially great cost to the parties and the court. While Janusz's prediction has merit, it may be equally possible that Janusz's preferred approach could deter a *defendant* from settling, out of concern that a settlement might not conclusively settle the matter: the plaintiff may later obtain a damages award from a different party who, in turn, might seek contribution from the defendant. We leave it to Illinois courts to weigh these and other relevant considerations in future cases that involve vacated judgments under § 12-183(h).

Before continuing, we acknowledge that *Saichek* appears to be an idiosyncratic decision with few (if any) true analogs. That alone, however, does not empower us to ignore an unambiguous decision rendered by a state supreme court on a matter of state substantive law. *See Williams, McCarthy, Kinley, Rudy & Picha v. Nw. Nat'l Ins. Grp.*, 750 F.2d 619, 624 (7th Cir. 1984) (observing that "the Illinois Supreme Court is the

final authority on the meaning of Illinois statutes"). *Saichek* was decided in 2003—approximately six years before Janusz and Keystone jointly sought to dismiss the *Keystone* case under § 12-183(h). That gave Janusz ample opportunity to review *Saichek* and to decide whether to continue with his appeal (rather than abandon it), or even to press for a quicker resolution in this case relative to *Keystone*. Janusz must live with the consequences of his decisions.

## B. Judicial Estoppel Applies

In an apparent attempt to circumvent the single-recovery rule, Janusz emphasizes that the settlement in *Keystone* was for less than the full amount of the judgment, thereby suggesting that the judgment was not fully satisfied. But Janusz unambiguously informed the *Keystone* court that the judgment had been fully satisfied—information the court relied on in vacating the judgment and dismissing the case. As a result, Janusz is judicially estopped from suggesting that the *Keystone* judgment was not fully satisfied due to the settlement amount.

When the doctrine of judicial estoppel is invoked against a party, we examine three factors: "(i) whether the party's positions in the two litigations are clearly inconsistent; (ii) whether the party successfully persuaded a court to accept its earlier position; and (iii) whether the party would derive an unfair advantage if not judicially estopped." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013). On at least one occasion, we have suggested that state law, not federal common law, should apply when the judgment at issue was rendered by a state court. *See Saecker v. Thorie*, 234 F.3d 1010, 1014 (7th Cir. 2000). But we need not resolve that issue here, since Illinois law does not differ significantly from federal law on the

issue. *See People v. Caballero*, 794 N.E.2d 251, 262 (Ill. 2002) ("[T]he party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it.").

The district court correctly concluded that judicial estoppel applies here. First, Janusz has taken inconsistent positions as to whether the *Keystone* judgment was satisfied by a payment of the entire judgment amount. Janusz and Keystone jointly executed a "Release (Satisfaction) of Judgment" in which they declared that Janusz "ha[d] received full satisfaction and payment" for the $3,177,500 judgment. Separately, the parties executed a stipulation stating that "Keystone had paid Plaintiff all monies due and owing to him as the result of the Judgment previously entered against Keystone." Both documents were attached to Keystone's motion to vacate the judgment and dismiss the case with prejudice, which the state court granted. These statements conflict with Janusz's repeated claim in this case that he received only $3 million from Keystone.

Unwilling to acknowledge this clear inconsistency, Janusz contends that he and Keystone merely conveyed to the *Keystone* court that the *settlement*, not the judgment, had been fully satisfied. But this ignores the unambiguous language of the Release, the Stipulation, and Keystone's Motion. Janusz argues that focusing on these documents without regard to the existence of a settlement somehow elevates "form over substance." However, Janusz has failed to cite a single fact demonstrating that the court in *Keystone* could have reason-

ably believed that the parties' settlement involved an amount different from the judgment. Notably, there is no evidence that Janusz or Keystone ever provided a copy of their settlement agreement to the court. And at oral argument, Janusz was unable to explain why he could not have modified the Release and the Stipulation to note the precise amount of the settlement.

Second, the court in *Keystone* clearly accepted Janusz's earlier position. In its order granting Keystone's motion to vacate and dismiss, the court found that "the Judgment previously entered against Keystone in the amount of Three-Million One-Hundred and Seventy-Seven Thousand Five-Hundred and 00/100s United States Dollars ($3,177,500.00) ha[d] been remitted and satisfied in full." At oral argument, Janusz conceded that he never informed the *Keystone* court that this statement was incorrect and should be modified accordingly.

Third, we find that Janusz would be unfairly enriched if he were not judicially estopped. We disagree with Janusz's claim that he did not derive any benefit from his statements to the *Keystone* court. As the *City* defendants correctly observe, the settlement agreement obligated Janusz to help obtain vacatur, dismissal, and discharge of Keystone's appeal bond by co-signing the stipulation and release and by "execut[ing] any and all supplementary documents … which may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement." A plain reading of the agreement indicates that Janusz was to undertake these actions in exchange for receiving $3 million. We also find that it would be unfair for Janusz to seek compensation in addition to the $3 million he has already received. As dis-

cussed above, *Saichek* instructs that Janusz is not entitled to a second bite at the apple simply because he believes he should have been awarded more money on the first go-round. While the *City* defendants may not be immune from a contribution action by the *Keystone* defendants, it would be unfair to require them to continue defending claims "based on the very same theory of recovery for the very same injuries in the very same [event]" that gave rise to the *Keystone* judgment. *Saichek*, 787 N.E.2d at 834–35.

Because we find that the single-recovery rule and the doctrine of judicial estoppel apply here, we need not address the *City* defendants' alternative argument that the *Keystone* settlement agreement released the *City* defendants from liability for injuries jointly caused by the *Keystone* and *City* defendants.

### III.  CONCLUSION

The judgment of the district court is AFFIRMED.